## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA (MIAMI DIVISION)

| | |
|---|---|
| CARMINA R. COMPARELLI, an individual, and<br><br>JULIO C. DELGADO COMPARELLI, an individual,<br><br>*Plaintiffs*,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA, a sovereign nation,<br><br>PETROQUÍMICA DE VENEZUELA, S.A., an agency or instrumentality of the Bolivarian Republic of Venezuela, and<br><br>INTERNATIONAL PETROCHEMICAL SALES, LTD., a British Virgin Islands corporation,<br><br>*Defendants*. | Case No. : 14-cv-24414-WILLIAMS |

### MOTION OF THE BOLIVARIAN REPUBLIC OF VENEZUELA
### FOR SUBSTITUTION OF COUNSEL

Defendant the Bolivarian Republic of Venezuela (the "Republic") hereby moves for an order pursuant to this Court's Local Rule 11.1(d)(4) substituting the undersigned as counsel for the Republic and removing Rodney Quinn Smith, II, Katherine Alena Saloja, and John Derek Womack of the law firm GST LLP as attorneys of record for the Republic.

In addition, pending the Court's action on the motion, the Republic lodges with the Court a proposed joinder in the pending motion to stay, attached hereto as Exhibit A.

1

**BACKGROUND**

The current attorneys of record for the Republic filed their appearances in 2015 and 2016 at the instruction of representatives of then-Venezuelan President Nicolás Maduro.

Since January 10, 2019, Juan Guaidó has assumed the office of Interim President of the Republic pursuant to Article 233 of the Venezuelan Constitution. On January 23, 2019, President Donald Trump issued a statement officially recognizing Mr. Guaidó as Interim President of the Republic and rejecting the legitimacy of the Maduro regime.[1] On January 25, 2019, the U.S. Department of State accepted Interim President Guaidó's designation of Carlos Alfredo Vecchio as the Chargé d'Affaires of the government of Venezuela.[2] Mr. Vecchio currently serves as Ambassador of Venezuela to the United States.

On February 25, Treasury Secretary Mnuchin, in announcing new sanctions against the Maduro regime, stated: "The United States fully supports the efforts of Interim President Juan Guaidó to address the endemic corruption, human rights abuses, and violent repression that has become the hallmark of the illegitimate Maduro regime, and looks forward to the restoration of a democratically elected government for the people of Venezuela."[3]  Also on February 25, Vice President Pence reiterated the position of the United States: "President Guaidó, President Donald

---

[1]   The White House, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela* (Jan. 23, 2019), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela/.

[2]   U.S. Department of State, Press Release, *Representative of the Government of Venezuela to the United States* (Jan. 27, 2019), *available at* https://www.state.gov/secretary/remarks/2019/01/288609.htm

[3]   U.S. Dep't of the Treasury, Press Release, *Treasury Sanctions Governors of Venezuelan States Aligned with Maduro* (Feb. 25, 2019), *available at* https://home.treasury.gov/news/press-releases/sm616.

Trump asked me to be here today to deliver a simple message to you and to the people of Venezuela: *Estamos con ustedes*. We are with you 100 percent. We stand with you in America, along with all the nations gathered here today, and we will keep standing with you until democracy and your *libertad* are restored."[4]

On February 26, 2019, the National Assembly of the Republic approved the designation of José Ignacio Hernández González as Special Attorney General to represent the interests of the Republic, state-owned companies, and other decentralized entities of the public administration outside of Venezuela. Special Attorney General Hernández instructed current counsel in this case to act only on his requests and instructions. Current counsel have declined that request. Mr. Hernández then instructed Arnold & Porter to file the instant motion. Current counsel oppose the relief sought.

## DISCUSSION

Substitution of current counsel for the Republic is required by the decision of the President of the United States to recognize President Guaidó as the rightful representative of the Republic and the current counsel's refusal to take instruction from President Guaidó's designee. A Presidential decision to recognize a party as the rightful government of a foreign state is conclusive and binding on the courts:

> What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government. Objections to its determination as well as to the underlying policy are to be addressed to it and not to the courts. Its action in recognizing a foreign government and in receiving its

---

[4] The White House, *Remarks by Vice President Pence to the Lima Group, Bogota, Colombia* (Feb. 25, 2019), *available at* https://www.whitehouse.gov/briefings-statements/remarks-vice-president-pence-lima-group-bogota-colombia/.

> diplomatic representatives is conclusive on all domestic courts, which are bound to accept that determination … .

*Guaranty Trust Co. v. United States,* 304 U.S. 126, 137–38 (1938).

Courts are equally bound to accept the Executive Branch's refusal to recognize a foreign government or faction. Permitting such a government to appear on behalf of the foreign state in U.S. courts necessarily implies acknowledgment of that government as the legitimate sovereign of the people residing within its borders—an acknowledgement and legitimization that would encroach upon the Executive Branch's exclusive recognition power. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964); Accordingly, to avoid the "possible incongruity of judicial 'recognition,'" *id.*, only the representatives of a government that has been recognized by the United States have standing to sue in U.S. courts or otherwise can avail themselves of the U.S. judicial system. *See Pfizer v. Government of India*, 434 U.S. 308, 319–20 (1978); *see also* Restatement (Third) of Foreign Relations Law § 205 ("[A] regime not recognized as the government of a state[] is ordinarily denied access to courts in the United States [and] is not entitled to property belonging to that state located in the United States … ."); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 860 F.2d 551, 553 (2d Cir. 1988) ("[A] state *derecognizes* a governmental regime when it recognizes another regime as the legitimate government of that state.").

The Executive Branch's authority to recognize and refuse to recognize foreign governments derives from the President's exclusive constitutional power to appoint and receive ambassadors (Article II, Sections 2 and 3), and from the pre-constitutional sovereign power to conduct the foreign relations of the United States. *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320–21 (1936); *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2084–85 (2015); Restatement (Third) of Foreign Relations Law § 204 ("Under the Constitution

of the United States the President has exclusive authority to recognize or not to recognize a foreign state or government … ."). "As a government, the United States is invested with all the attributes of sovereignty. As it has the character of nationality it has the powers of nationality, especially those which concern its relations and intercourse with other countries. *We should hesitate long before limiting or embarrassing such powers*." *Curtiss-Wright*, 299 U.S. at 322 (quoting *Mackenzie v. Hare*, 239 U.S. 299, 311 (1915)) (emphasis by the *Curtis-Wright* court).

The constitutional allocation of power over foreign affairs to the Political Branches reflects, in part, the fact that "federal courts generally lack the institutional expertise and constitutional authority to oversee foreign policy and national security, and should be wary of straying where they do not belong." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1419 (2018) (Gorsuch, J., concurring). Thus, the courts are "wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs," *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004), and circumspect when faced with "the danger of unwarranted judicial interference in the conduct of foreign policy," *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 117 (2013). As the Supreme Court has explained, "neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our Nation and its people." *Boumediene v. Bush*, 553 U.S. 723, 797 (2008).

For these reasons, courts deem the President's recognition actions binding and conclusive. *Guaranty Trust Co.*, 304 U.S. at 137–38. That is so both in cases where an unrecognized government seeks to assert claims in U.S. court, *see id.*, and where competing political factions attempt to assert the interests of a foreign sovereign in U.S. court, *see Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 673 (S.D. Fla. 1988).

US 164579333v1

In *Air Panama*, Judge Hoeveler of this Court confronted a dispute between President Delvalle, the recognized president of Panama, and Manuel Noriega over control of the Panamanian national airline, Air Panama. The court held that the decision by the President to recognize the Delvalle government conclusively resolved the dispute:

> In the instant case it is undisputed that Air Panama is owned by the Republic of Panama. The Executive Branch has recognized the Delvalle government as the lawful government of the Republic of Panama. Therefore, under the political question doctrine, this Court accepts that recognition and consequently concludes that the Delvalle government is entitled to control Air Panama.

745 F. Supp. at 672–73. The court also rejected purported "appearances" entered by lawyers on behalf of Air Panama on the instruction of the Noriega regime. *Id.* at 676 ("It clearly appears, and the Court so finds, that Messrs. Kurzban and Gross are in fact attempting to assert the interests of the Noriega/Palma regime. This effort must be rejected. Only governments recognized by the United States are entitled to access to United States courts.").

As explained above, the Executive Branch has unequivocally and repeatedly repudiated Mr. Maduro's claims of political, legal, and diplomatic authority. Any judicial "recognition" of the Maduro regime, including by permitting attorneys authorized by that illegitimate regime (and not by representatives of Interim President Guaidó) to represent the interests of the Republic in litigation before this Court, would conflict with the foreign-policy determinations of the Executive Branch, in stark violation of the Constitution's allocation of such determinations to the President.

## CONCLUSION

For the foregoing reasons, the Bolivarian Republic of Venezuela respectfully requests that the Court grant its motion for substitution of counsel and remove Rodney Quinn Smith, II,

Katherine Alena Saloja, and John Derek Womack, and the law firm GST LLP as attorneys of record for the Republic.

Dated: March 19, 2019

/s/ *Manuel Kushner*
Manuel Kushner
ARNOLD & PORTER KAYE SCHOLER LLP
Phillips Point, East Tower
777 S. Flagler Drive, Suite 1000
West Palm Beach, FL 33401-6152
Telephone: +1 561.802.3230
Fax: +1 561.802.3217
manuel.kushner@arnoldporter.com

Kent A. Yalowitz*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212.836.8000
Fax: +1 212.836.8689
kent.yalowitz@arnoldporter.com

E. Whitney Debevoise*
Arturo Caraballo*
Sally L. Pei*
Stephen K. Wirth*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999
whitney.debevoise@arnoldporter.com
sally.pei@arnoldporter.com
stephen.wirth@arnoldporter.com

**Pro hac* motions forthcoming.

*Attorneys for the Bolivarian Republic of Venezuela*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), undersigned counsel hereby certify that they have conferred with all parties or non-parties who may be affected by the relief sought in the motion, in a good faith effort to resolve the issues raised in the motion, and have been unable to do so.

Dated:  March 19, 2019                    */s/ Manuel Kushner*
                                                                Manuel Kushner

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2019, I electronically filed the foregoing document with the United States District Court for the Southern District of Florida by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

> _/s/ Manuel Kushner_
> Manuel Kushner

US 164579333v1