**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CARMINA R. COMPARELLI, an individual
and JULIO C. DELGADO COMPARELLI, an
individual.

                    Plaintiffs,      Case No..: 1-14-CV-24414-KMW

    -against-

REPÚBLICA BOLIVARIANA DE VENEZUELA,
a sovereign nation, PETROQUÍMICA DE
VENEZUELA, S.A., an agency or instrumentality
of the Bolivarian Republic of Venezuela, and
INTERNATIONAL PETROCHEMICAL SALES,
LTD., a British Virgin Islands corporation.

                    Defendants.
_____/

**PLAINTIFFS' STATEMENT OF POSITION IN REGARDS TO REPÚBLICA
BOLIVARIANA DE VENEZUELA'S MOTION FOR SUBSTITUTION OF COUNSEL
AND MOTION TO STRIKE FILINGS AND DISCOVERY RESPONSES SERVED OR
FILED BY GST, LLP SINCE JANUARY 23, 2019**

      Plaintiffs, Carmina R. Comparelli ("Carmina") and Julio C. Delgado Comparelli ("Julio") (collectively, "Plaintiffs"), through their undersigned counsel, hereby file this Statement of Position in Regards to Defendant República Bolivariana de Venezuela's ("Venezuela") Motion for Substitution of Counsel [ECF No. 134] and Motion to Strike all filings and discovery responses served or filed by GST, LLP ("GST") on behalf of Venezuela since January 23, 2019. In support thereof, Plaintiffs state as follows:

**PRELIMINARY STATEMENT**

      Plaintiffs adopt all arguments made in Venezuela's Motion for Substitution of Counsel [ECF No. 134] and Venezuela's Reply in Support of its Motion for Substitution of Counsel [ECF

No. 150].  As fully set forth therein, the January 23, 2019, the decision of the President of the United States on the recognition of Guaidó as the Interim President of Venezuela and the de-recognition of the Maduro regime is **controlling** in the courts of the United States.  In this Court, Interim President Guaidó and only Interim President Guaidó may appoint the legal representative of Venezuela.  The Guaidó administration reatained Arnold & Porter Kaye Scholer LLP ("<u>Arnold & Porter</u>")—not GST—as its legal representative in this case.  For that reason, GST is not authorized to make filings or serve discovery responses in the name of Venezuela on instruction of the Maduro regime.  Therefore, Plaintiffs respectfully request the Court enter an Order substituting GST for Arnold & Porter as counsel for Venezuela and striking all filings[1] [ECF Nos. 125, 133, 142, 146, 148, 149, and 154] and service of discovery responses made by GST on behalf of Venezuela since January 23, 2019.

## BACKGROUND

Since January 10, 2019, Juan Guaidó has assumed the office of Interim President of the Republic pursuant to Article 233 of the Venezuelan Constitution.  On January 23, 2019, President Donald Trump issued a statement officially recognizing Mr. Guaidó as Interim President of Venezuela and rejecting the legitimacy of the Maduro regime.  Guaidó was elected as the President of the National Assembly (*i.e.*, the Legislative Branch), which is the only legitimate and democratically-elected branch of the Venezuelan Government.  On January 25, 2019, the U.S. Department of State accepted Interim President Guaidó's designation of Carlos Alfredo Vecchio as the Chargé d'Affaires of the government of Venezuela.  Mr. Vecchio currently serves as Ambassador of Venezuela to the United States.

---

[1] In *Casa Express Corp. as Trustee of Casa Express Trust v. Bolivarian Republic of Venezuela*, Case No. 18-CV-11940 (AT) (KNF), the Southern District of New York struck all filings made by Venezuela's representatives of the Maduro regime. [ECF No. 152-1].

On February 25, Treasury Secretary Mnuchin, in announcing new sanctions against the Maduro regime, stated: "The United States fully supports the efforts of Interim President Juan Guaidó to address the endemic corruption, human rights abuses, and violent repression that has become the hallmark of the illegitimate Maduro regime, and looks forward to the restoration of a democratically elected government for the people of Venezuela." Also on February 25, Vice President Pence reiterated the position of the United States: "President Guaidó, President Donald Trump asked me to be here today to deliver a simple message to you and to the people of Venezuela: *Estamos con ustedes*. We are with you 100 percent. We stand with you in America, along with all the nations gathered here today, and will keep standing with you until democracy and you *libertad* are restored."

On February 26, 2019, the National Assembly of the Republic approved the designation of José Ignacio Hernández González as Special Attorney General to represent the interests of Venezuela, state-owned companies, and other decentralized entities of the public administration outside of Venezuela. Special Attorney General Hernández instructed GST in this case to act only on his requests and instructions. GST has declined that request. Mr. Hernández then instructed Arnold & Porter to file the instant motion. GST oppose the relief sought.

## DISCUSSION

In the United States, a Presidential decision to recognize a party as the rightful government of a foreign state is

conclusive and binding on the courts of the United States:

> What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government. Objections to its determination as well as to the underlying policy are to be addressed to it and not to the courts. Its action in recognizing a foreign government and in receiving its diplomatic representatives is conclusive on all domestic courts, which are bound to accept that determination.

*Guaranty Trust Co. v. United States*, 304 U.S. 126, 137-38 (1938).

United States courts are equally bound to accept the Executive Branch's refusal to recognize a foreign government or faction.  Permitting such a government to appear on behalf of the foreign state in U.S. courts necessarily implies acknowledgment of that government as the legitimate sovereign of the people residing within its borders—an acknowledgement and legitimization that would encroach upon the Executive Branch's exclusive recognition power.  *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964).  Accordingly, to avoid the "possible incongruity of judicial 'recognition,'" *id.*, only the representatives of a government that has been recognized by the United States have standing to sue in U.S. courts or otherwise can avail themselves of the U.S. judicial system. *See Pfizer v. Government of India*, 434 U.S. 308, 319–20 (1978); *see also* Restatement (Third) of Foreign Relations Law § 205 ("[A] regime not recognized as the government of a state[] is ordinarily denied access to courts in the United States [and] is not entitled to property belonging to that state located in the United States … ."); *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 860 F.2d 551, 553 (2d Cir. 1988) ("[A] state derecognizes a governmental regime when it recognizes another regime as the legitimate government of that state.").

The Executive Branch's authority to recognize and refuse to recognize foreign governments derives from the President's exclusive constitutional power to appoint and receive ambassadors (Article II, Sections 2 and 3), and from the pre-constitutional sovereign power to conduct the foreign relations of the United States. *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320–21 (1936); *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2084–85 (2015); Restatement (Third) of Foreign Relations Law § 204 ("Under the Constitution of the United States the President has exclusive authority to recognize or not to recognize a foreign state

4

or government … ."). "As a government, the United States is invested with all the attributes of sovereignty. As it has the character of nationality it has the powers of nationality, especially those which concern its relations and intercourse with other countries. We should hesitate long before limiting or embarrassing such powers." *Curtiss-Wright*, 299 U.S. at 322 (quoting *Mackenzie v. Hare*, 239 U.S. 299, 311 (1915)) (emphasis in original).

Our constitutional structure ensures that the United States speaks **"with one voice in dealing with other governments"** by vesting the Executive Branch with exclusive authority to recognize foreign governments on behalf of the United States. *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 424 (2003); *see United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320–21 (1936); *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2084–85 (2015); Restatement (Third) of Foreign Relations Law § 204. The constitutional allocation of power over foreign affairs to the Political Branches reflects, in part, the fact that "federal courts generally lack the institutional expertise and constitutional authority to oversee foreign policy and national security, and should be wary of straying where they do not belong." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1419 (2018) (Gorsuch, J., concurring). Thus, the courts are "wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs," *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004), and circumspect when faced with "the danger of unwarranted judicial interference in the conduct of foreign policy," *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 117 (2013). As the Supreme Court has explained, "neither the Members of this Court nor most federal judges begin the day with briefings that may describe new and serious threats to our Nation and its people." *Boumediene v. Bush*, 553 U.S. 723, 797 (2008).

To that end, it is vital that the Judiciary not contradict or second guess the Executive Branch's foreign-policy determinations by permitting a derecognized government to appear in

U.S. courts on behalf of a foreign sovereign. Such "judicial 'recognition'" would necessarily imply acknowledgment of that government as the legitimate sovereign of the people residing within its borders—an acknowledgement and legitimization that would encroach upon the Executive Branch's exclusive recognition power. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964); *see also Guaranty Trust Co. v. United States*, 304 U.S. 126, 137–38 (1938).

Judicial deference to the Executive Branch's recognition or derecognition of a foreign government is the only administrable standard. Litigation involving foreign sovereigns raises delicate issues of international relations that courts lack the competence to address. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983). As the Supreme Court has advised on numerous occasions, courts must be especially wary of "the danger of unwarranted judicial interference in the conduct of foreign policy," *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 117 (2013), because they lack the "constitutional authority" and "institutional expertise" necessary to make sensitive foreign-policy determinations, *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1419 (2018) (Gorsuch, J., concurring). *See also Boumediene v. Bush*, 553 U.S. 723, 797 (2008); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004).

For these reasons, courts deem the President's recognition actions **binding and conclusive**. *Guaranty Trust Co.*, 304 U.S. at 137–38. That is so both in cases where an unrecognized government seeks to assert claims in U.S. court, *see id.*, and where competing political factions attempt to assert the interests of a foreign sovereign in U.S. court, *see Republic of Panama v. Air Panama Internacional*, S.A., 745 F. Supp. 669, 673 (S.D. Fla. 1988).

In *Air Panama*, Judge Hoeveler of this Court confronted a dispute between President Delvalle, the recognized president of Panama, and Manuel Noriega over control of the Panamanian

6

national airline, Air Panama. The court held that the decision by the President to recognize the Delvalle government conclusively resolved the dispute:

> In the instant case it is undisputed that Air Panama is owned by the Republic of Panama. The Executive Branch has recognized the Delvalle government as the lawful government of the Republic of Panama. Therefore, under the political question doctrine, this Court accepts that recognition and consequently concludes that the Delvalle government is entitled to control Air Panama.

*Republic of Panama*, 745 F. Supp. at 672-73.  The court also rejected purported "appearances" entered by lawyers on behalf of Air Panama on the instruction of the Noriega regime. *Id.* at 676 ("It clearly appears, and the Court so finds, that Messrs. Kurzban and Gross are in fact attempting to assert the interests of the Noriega/Palma regime. This effort must be rejected. Only governments recognized by the United States are entitled to access to United States courts.").

Similarly, here, the Executive Branch has unequivocally recognized the Guaidó government as the only legitimate representative of the people of Venezuela. This recognition has come not just from the President, but also the Vice President, the Secretary of State, and the Secretary of the Treasury.

The Executive Branch has also expressed its de-recognition of the Maduro regime.  In recognizing the Guaidó government, President Trump stated in no uncertain terms that the Maduro regime had become "illegitimate." Vice President Pence likewise stated that Mr. Maduro has "no legitimate claim to power" and called on other nations to "join" the United States in "[w]ithdraw[ing] [their] support for the Maduro regime." And Secretary of State Pompeo stated that "[t]he United States does not recognize the Maduro regime as the government of Venezuela" and referred to Mr. Maduro as the "former president." These unequivocal statements, together with the Executive Branch's express recognition of the Guaidó government, leave no doubt that the United States has derecognized "the illegitimate Maduro regime."

Consequently, any judicial "recognition" of the Maduro regime, including by permitting attorneys authorized by that illegitimate regime (and not by representatives of Interim President Guaidó) to represent the interests of the Republic in litigation before this Court, would conflict with the foreign-policy determinations of the Executive Branch, in stark violation of the Constitution's allocation of such determinations to the President.

**WHEREFORE**, Plaintiffs respectfully request this Court enter an Order: (i) granting Venezuela's Motion for Substitution of Counsel [ECF No. 134]; (ii) substituting GST for Arnold & Porter as counsel for Venezuela; (iii) striking all filings [ECF Nos. 125, 133, 142, 146, 148, 149, and 154] and discovery responses filed or served by GST on behalf of Venezuela since January 23, 2019; and (iv) granting any further relief this Court deems just and proper.

Dated:  April 19, 2019.                   Respectfully submitted,

                                          LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
                                          777 Arthur Godfrey Road, Suite 402
                                          Miami Beach, Florida 33140
                                          E-mail: rodrigo@rdasilvalaw.com
                                          Telephone:     (305) 615-1434
                                          Facsimile:     (305) 615-1435

                                          By: /s/ *Rodrigo S. Da Silva*
                                              Rodrigo S. Da Silva, Esq.
                                              Florida Bar No. 0088600
                                              Kimberly De La Cruz, Esq.
                                              Florida Bar No. 1007934
                                              *Counsel for Plaintiffs, Carmina R. Comparelli and Julio C. Delgado Comparelli*

## **CERTIFICATE OF COMPLIANCE OF GOOD FAITH CONFERRAL**

Pursuant to Local Rule 7.1(a)(3), counsel for plaintiffs Carmina R. Comparelli and Julio C. Delgado Comparelli, Rodrigo S. Da Silva, certifies that he conferred with Quinn Smith, Esq., counsel for the Bolivarian Republic of Venezuela, on March 30, 2019, who represented that his clients object the relief sought herein.

/s/ *Rodrigo S. Da Silva*
Rodrigo S. Da Silva, Esq.

**CERTIFICATION OF SERVICE**

I hereby certify that on April 19, 2019, I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Rodrigo S. Da Silva*
Rodrigo S. Da Silva, Esq.