## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CARMINA R. COMPARELLI, an individual
and JULIO C. DELGADO COMPARELLI, an
individual.

                              Plaintiffs,            Case No..: 1-14-CV-24414-KMW

                  -against-

REPÚBLICA BOLIVARIANA DE VENEZUELA,
a sovereign nation, PETROQUÍMICA DE
VENEZUELA, S.A., an agency or instrumentality
of the Bolivarian Republic of Venezuela, and
INTERNATIONAL PETROCHEMICAL SALES,
LTD., a British Virgin Islands corporation.

                        Defendants.

_____/

### PLAINTIFFS' MOTION TO COMPEL[1] DEFENDANT REPÚBLICA BOLIVARIANA DE VENEZUELA TO PRODUCE BETTER ANSWERS TO PLAINTIFFS' JURISDICTIONAL DISCOVERY REQUESTS



Plaintiffs, Carmina R. Comparelli ("Carmina") and Julio C. Delgado Comparelli ("Julio")

(collectively, "Plaintiffs"), through their undersigned counsel, move to compel República

Bolivariana De Venezuela ("Venezuela" or "Defendant") to produce better answers to Plaintiffs'

jurisdictional discovery requests. In support thereof, Plaintiffs state as follows:

---

[1] For the reasons set forth in Plaintiffs' Statement of Position in Regards to Venezuela's Motion for Substitution of Counsel and Motion to Strike Filings and Discovery Responses Served or Filed by GST, LLP, since January 23, 2019 (the "Motion to Strike"), Plaintiffs' deem Venezuela's responses to Plaintiffs' jurisdictional discovery requests, which GST, LLP, served on behalf of Venezuela and the Maduro regime on March 15, 2019, to be invalid and struck from the docket. Consequently, Plaintiffs' opine that this Motion is moot and unnecessary. Nevertheless, if the Court is inclined to rule that GST, LLP, is proper counsel for Venezuela and that the Maduro regime is the proper government of Venezuela, and deny Plaintiffs' Motion to Strike, Plaintiffs' respectfully submit this Motion to Compel Venezuela to Produce Better Answers to Plaintiffs' Jurisdictional Discovery Requests.

## FACTUAL BACKGROUND

1.      On January 24, 2019, the Court entered a Scheduling Order [ECF No. 121] whereby the parties were to exchange jurisdictional discovery requests by February 6, 2019, and the deadline to serve written responses to the discovery requests was set for March 8, 2019 and the production of documents responsive to any requests for production was set for March 22, 2019.

2.      On February 6, 2019, Plaintiffs served each Defendant with Interrogatories, Requests for Production, and Requests for Admission.

3.      On March 8, 2019, Venezuela filed a Motion for Extension of Time to Serve its Written Responses to Plaintiffs' First Set of Discovery Requests [ECF No. 125] ("Venezuela's Motion for Extension of Time").

4.      The Court never ruled on Venezuela's Motion for Extension of Time.

5.      On March 15, 2019, Venezuela served Plaintiffs with untimely and inadequate responses to jurisdictional discovery requests.

## ARGUMENT

The scope of discovery under Federal Rule of Civil Procedure 26(b) is broad: "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party involved in the pending action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b); *see also Hickman v. Taylor*, 329 U.S. 495, 507–508 (1947); *Farnsworth v. Procter and Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (the Federal Rules of Civil Procedure "strongly favor full discovery whenever possible"); *Canal Authority v. Froehlke*, 81 F.R.D. 609, 611 (M.D. Fla. 1979).  Thus, under Rule 26, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that

could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Discovery is not limited to the issues raised by the pleadings because "discovery itself is designed to help define and clarify the issues." *Id.* at 352. In short, information can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. *Dunbar v. United States*, 502 F.2d 506 (5th Cir. 1974).

While the scope of discovery is broad, it is not without limits. *Washington v. Brown & Williamson Tobacco,* 959 F.2d 1566, 1570 (11th Cir. 1992). Indeed, the 2000 Amendment to Rule 26 has effectively limited the scope of discoverable information to those matters which are relevant to a claim or defense in the lawsuit. *Dellacasa, LLC v. John Moriarty & Ass. of Florida, Inc.,* Case No. 07-21659-CIV, 2007 WL 4117261, at *3 (S.D. Fla. November 16, 2007). Courts have long held that "[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to 'roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union,* 103 F.3d 1007, 1012–13 (C.A.D.C. 1997) (quoting *Broadway and Ninety–Sixth Street Realty Co. v. Loew's Inc.,* 21 F.R.D. 347, 352 (S.D.N.Y.1958)).

Under Rule 26(b)(1) "a court may limit discovery of relevant material if it determines that the discovery sought is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit." *Henderson v. Holiday CVS, LLC*, 269 F.R.D. 682, 686 (S.D. Fla. 2010). The party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted. *Rossbach v. Rundle,* 128 F. Supp. 2d 1348,

1354 (S.D. Fla. 2000) ("The onus is on the party resisting discovery to demonstrate specifically how the objected-to information is unnecessary, unreasonable or otherwise unduly burdensome."); *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,* 2001 WL 34079319 (S.D. Fla. 2001) ("the burden of showing that the requested information is not relevant to the issues in the case is on the party resisting discovery") (citation omitted); *Gober v. City of Leesburg,* 197 F.R.D. 519, 521 (M.D. Fla. 2000) ("The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information").  "To meet this burden, the party resisting discovery must demonstrate specifically how the objected-to request is unreasonable or otherwise unduly burdensome." *Henderson*, 296 F.R.D. at 686; *see* Fed. R. Civ. P. 33(b)(4); *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1559 (11th Cir.1985); *Rossbach,* 128 F. Supp. 2d at 1353.  Thus, to even merit consideration, "an objection must show specifically how a discovery request is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Coker v. Duke & Co.,* 177 F.R.D. 682, 686 (M.D. Ala. 1998).  Once the resisting party meets its burden, the burden shifts to the moving party to show the information is relevant and necessary. *Gober,* 197 F.R.D. at 521; *see also Hunter's Ridge Golf Co. Inc. v. Georgia–Pacific Corp.,* 233 F.R.D. 678, 680 (M.D. Fla. 2006).

Here, Plaintiffs propounded Requests for Admissions ("RFA"), Interrogatories ("ROGS"), and Requests for Production ("RFP") on Venezuela on February 6, 2019, as required by the Scheduling Order.  Venezuela failed to comply with the Scheduling Order by serving its responses on March 15, 2019, seventeen (17) days after their due date.  Aside from being untimely, Venezuela's responses to Plaintiffs' jurisdictional discovery requests make mundane and inadequate objections, thereby stalling the proceedings and delaying the Court's ultimate decision on subject matter jurisdiction.  Consequently, Plaintiffs respectfully request this Court grant this

Motion to Compel and Order Venezuela to provide adequate answers to the specific requests stated herein.

### A.  Responses to Requests for Admission

#### a.  RFA No. 1

RFA No. 1 states: Admit that Plaintiff Carmina Comparelli ("Carmina") is not a Venezuelan Citizen.

Venezuela's Response: The Republic objects to the extent that the Request is overbroad. There is no time period specified. The request calls for a legal conclusion to the extent that it seeks to define "citizen" for the purposes of international human rights law, international investment law, any Venezuelan law that imposes the obligations of citizenship on an individual, and the application of any US law that treats a foreign national as a citizen of the country where that 2 person resides, regardless of the passport held or birth certificate claimed by the individual. Subject to and without waiving the objection, this Request is admitted.

Venezuela must respond to RFA No. 1 because it is not overbroad and is reasonably calculated to lead to admissible evidence.  It is clear that Carmina is not a Venezuelan citizen. Carmina was born in Italy and never obtained Venezuelan citizenship.  In fact, in Eleventh Circuit's decision, the court acknowledged that Carmina is not a Venezuelan citizen and never became a Venezuelan citizenship during her years of residence in the country.  Moreover, this Court indicated during the status conference on January 23, 2019, that Carmina's citizenship is not really an issue after the Eleventh Circuit's decision.  Consequently, Venezuela is more than equipped to admit that Carmina is not a Venezuelan citizen and shall be compelled to respond to RFA No. 1.

#### b.  RFA No. 2

RFA No. 2 states: Admit that Carmina is an Italian Citizen

Venezuela's Response: The Republic objects to the extent that the Request is overbroad. There is no time period specified. The request calls for a legal conclusion to the extent that it seeks to define "citizen" for the purposes of international human rights law, international investment law, any Venezuelan law that imposes the obligations of citizenship on an individual, and the application of any US or Italian law that treats a foreign national as a citizen of the country where that person resides, regardless of the passport held or birth certificate claimed by the individual. Subject to and without waiving the objection, the Republic can neither admit nor deny the status of Carmina's citizenship because the Republic cannot confirm the status of citizenship of an individual under the laws of another State.

Venezuela must respond to RFA No. 2 because it is not overbroad and is reasonably calculated to lead to admissible evidence.  It is clear that Carmina is an Italian citizen.  Carmina was born in Italy and has an Italian passport.  In addition, in Eleventh Circuit's decision, the court acknowledged that Carmina was born in Italy, is an Italian citizen, and never became a Venezuelan citizen. Moreover, this Court indicated during the status conference on January 23, 2019, that Carmina's citizenship is not really an issue after the Eleventh Circuit's decision.  Consequently, Venezuela is more than equipped to admit that Carmina is an Italian citizen and shall be compelled to respond to RFA No. 2.

### c.   RFA No. 3

RFA No. 3 states: Admit that Plaintiff Julio Delgado ("Julio") is an Italian citizen

Venezuela's Response: The Republic objects to the extent that the Request is overbroad. There is no time period specified. The request calls for a legal conclusion to the extent that it seeks to define "citizen" for the purposes of international human rights law, international investment law,

any Venezuelan law that imposes the obligations of citizenship on an individual, and the application of any US or Italian law that treats a foreign national as a citizen of the country where that person resides, regardless of the passport held or birth certificate claimed by the individual. Subject to and without waiving the objection, the Republic can neither admit nor deny the status of Julio's citizenship because the Republic cannot confirm the status of citizenship of an individual under the laws of another State.

Venezuela must respond to RFA No. 3 because it is not overbroad and is reasonably calculated to lead to admissible evidence. Julio is an Italian citizen, from the moment he was born to present, either by birth place or by operation of law. Julio is the son of Carmina and he is also an Italian citizen. Julio has an Italian passport, which is attached to the Second Amended Complaint. Although Julio was born in Venezuela, he is an Italian citizen at birth by operation of law. Italian citizenship is automatically conferred *jure sanguinis*. This means that Italian citizenship is based upon the principle of *ius sanguinis* (blood right) meaning that the child born from an Italian father or mother is an Italian citizen regardless of the place of birth. Thus, Venezuela is more than equipped to admit that Julio is an Italian citizen and shall be compelled to respond to RFA No. 3.

### d. RFA No. 4

RFA No. 4 states: Admit that Plaintiff Julio is a United States citizen.

Venezuela's Response: The Republic objects to the extent that the Request is overbroad. There is no time period specified. The request calls for a legal conclusion to the extent that it seeks to define "citizen" for the purposes of international human rights law, international investment law, any Venezuelan law that imposes the obligations of citizenship on an individual, and the application of any US or Italian law that treats a foreign national as a citizen of the country where that person resides, regardless of the passport held or birth certificate claimed by the individual.

Subject to and without waiving the objection, the Republic can neither admit nor deny the status of Julio's citizenship because the Republic cannot confirm the status of citizenship of an individual under the laws of another State.

Venezuela must respond to RFA No. 4 because it is not overbroad and is reasonably calculated to lead to admissible evidence.  Julio is a United States citizen and his America passport was attached to the Second Amended Complaint.  Thus, Venezuela is more than equipped to admit that Julio is United States and shall be compelled to respond to RFA No. 4.

### e.   RFA No. 6

RFA No. 6 states: Admit that during the time between 2008 through 2018, You engaged in commercial activities in the United States.

Venezuela's Response: The Republic objects to the extent that the Request is vague and overbroad. You is broadly defined to include any number of instrumentalities and agencies, failing to respect the recognized separateness of the Republic from its agencies and instrumentalities. The time period is too broad, covering a time span of 10 years, which is far too broad for the purposes of the determining the Motion to Dismiss filed by the Republic. Subject to and without waiver to any objection, the Republic denies this Request to the extent is refers to commercial activities involving only the Republic.

Venezuela must respond to RFA No. 6 because it is not overbroad nor vague and it is reasonably calculated to lead to admissible evidence.  In order for the Court to have subject matter jurisdiction over Venezuela, Plaintiffs have the burden of proving several factors including whether Venezuela engaged in commercial activities in the United States.   See 28 U.S.C. § 1605(a)(3) (To establish a nexus with the United States as to Venezuela, Plaintiffs must connect the alleged acts through one of two prongs: (1) "the property or any property exchanged for such

property is present in the United States in connection with a commercial activity carried on in the United States by the foreign states" or (2) "that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."). Plaintiffs are seeking to prove the second prong. Thus, determining whether Venezuela engaged in commercial activities with the United States from 2008 (the year of the expropriation) through 2018 (the year that the Motion to Dismiss the Second Amended Complaint was filed) is a specifically and narrowly tailored request and is reasonably calculated to lead to admissible evidence. Thus, Venezuela shall be compelled to respond to RFA No. 6.

**f.  RFA No. 9**

RFA No. 9 states: Admit that you did not compensate Carmina for the taking of Marivelca or Marivelca's assets and operation as a business concern.

Venezuela's Response: The Republic objects to this Request to the extent it is overbroad and vague. There is no definition of "Marivelca's assets and operation as a business concern." The Request also presumes a "taking," which the Republic denies; any right to compensation held by Carmina; any right to compensation for "operation as a business concern," which is itself vague and not contained in the Second Amended Complaint; and any value for the supposed taking, if such value even exists. Because of the nature of the Request and its many flaws, the Republic can neither admit or deny it.

Venezuela must respond to RFA No. 9. Venezuela misinterprets what RFA No. 9 is requesting. RFA No. 9 does not ask Venezuela to admit nor deny that a taking occurred nor whether Carmina had any right to compensation. The request simply asks Venezuela to admit or deny whether Carmina received any compensation whatsoever—regardless whether she was

entitled to it or not—for the alleged expropriation.  Venezuela argues that it cannot admit or deny because "Marivelca's assets and operation as a business concern" is not properly defined.  This argument is completely unfounded.  The sole reason for this lawsuit is the expropriation of Marivelca and Trans Benz by all Defendants including Venezuela.  Thus, Venezuela is fully aware of the meaning of Marivelca and is therefore fully equipped to respond to RFA No. 9 and must be compelled to do so.

### g.   RFA No. 10

RFA No. 10 states: Admit that you did not compensate Julio for the taking of Trans Benz or Trans Benz's assets and operation as an ongoing business concern.

Venezuela's Response: The Republic objects to this Request to the extent it is overbroad and vague. There is no definition of "Trans Benz's assets and operation as a business concern" or time period specified. The Request fails to describe with any particularity the assets or operations to which it refers. The Request also presumes a "taking," which the Republic denies; any right to compensation held by Julio; any right to compensation for "operation as a business concern," which is itself vague and not contained in the Second Amended Complaint; and any value for the supposed taking, if such value even exists. Because of the nature of the Request and its many flaws, the Republic can neither admit or deny it.

For the same reasons stated above in response to RFA No. 9, Venezuela is fully equipped to respond to RFA No. 10 and must be compelled to do so.

### h.   RFA No. 12

RFA No. 12 states: Admit that when a new penal law favors a criminal defendant in Venezuela, the new penal law must be applied retroactively because it is illegal pursuant to Article

2 of the Penal Code, to continue to prosecute a defendant for a crime grounded on facts that no longer constitute criminal activity under the new penal law.

Venezuela's Response: The Republic objects to this Request to the extent it is overbroad and vague. There is no definition of Article 2 of the Penal Code and no reference to the specific law it is addressing (i.e. there is no specific state law referenced). The request also calls for a purely legal conclusion as to the interpretation of Article 2 of the Penal Code of an unspecified jurisdiction. Because the Request only seeks a legal conclusion, the Republic can neither admit or deny the Request.

Venezuela must respond to RFA No. 12 because it is not overbroad nor vague and it is reasonably calculated to lead to admissible evidence. RFA No. 12 specifically requests Venezuela to admit or deny whether a specific law applies in Venezuela. Venezuela is country and should be fully aware of the laws that govern its citizens. Thus, Venezuela is fully equipped to adequately respond to RFA No. 12 and must be compelled to do so.

### i. RFA No. 14

RFA No. 14 states: Admit that International Petrochemical Sales, Ltd. ("IPSL") is not your agency or instrumentality as defined in 28 U.S.C. §1603.

Venezuela's Response: The Republic objects to this Request because it calls for a purely legal conclusion as to whether IPSL is an agency or instrumentality as defined in 28 USC § 1603. Because of the nature of the Request, the Republic can neither admit nor deny it.

Venezuela must adequately admit or deny RFA No. 14 because, in effect, the request concerns the application of fact to law, not a purely legal conclusion. In order for Venezuela to admit or deny RFA No. 14, it must take into account certain facts regarding its relationship with IPSL. Such inquiry requires Venezuela to apply the law under 28 U.S.C. §1603 to its factual

relationship with IPSL, and is acceptable under the Federal Rules of Civil Procedure. Rule 36(a)(1) allows for a party to serve on any other party a request that the part admit "the truth of any matters within the scope of Rule 26(b)(1) relating to ... facts, the application of law to fact, or opinions about either...." Fed. R. Civ. P. 36(a)(1)(A). RFAs "expedite trials by establishing as true certain material facts of a case without the necessity of formal proof at trial." *Keen v. Detroit Diesel Allison,* 569 F.2d 547, 554 (10th Cir. 1978) (citation omitted). The 1970 amendment to Rule 36(a) deleted "relevant matters of fact," thus allowing requests applying law to fact. Fed. R. Civ. P. 36, advisory committee note to the 1970 amendments ("As revised, the subdivision provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact. It thereby eliminates the requirement that the matters be 'of fact.'").

### j.   RFA No. 17

RFA No. 17 states: Admit that the criminal proceeding brought against the Plaintiffs is open and ongoing.

Venezuela's Response: The Republic objects to this Request to the extent it is vague and overbroad. There is no time period specified. Specifically, the Request fails to describe with any particularity the criminal proceeding to which it refers, and the Republic does not know which criminal proceedings may be open or the individuals or officials pursuing such proceedings. Without any definition of the "criminal proceeding," the Republic is without information sufficient to admit or deny the Request.

Venezuela contends that it is not aware of the criminal proceedings referred to in RFA No. 17. Yet, in its filings with the Court, Venezuela argues that Plaintiffs were not entitled to compensation for the alleged expropriation of their respective companies because criminal

proceedings were launched against Plaintiffs wherein preventative seizures and criminal forfeitures took place.  Venezuela further states that Plaintiffs are not entitled to compensation for Marivelca or Trans Benz because Plaintiffs were accused of having illegal quantities of highly regulated substances.  Consequently, Venezuela cannot avoid admitting or denying RFA No. 17 merely for lack of definition when it very well knows what criminal proceedings Plaintiffs are referring to.

### k.  RFA No. 18

RFA No. 18 states: Admit that there has never been a criminal proceeding involving Trans Benz.

Venezuela's Response: The Republic objects to this Request to the extent it is vague and overbroad. The Request fails to describe with any particularity the criminal proceedings, and the Republic does not know which criminal proceedings may be open or the individuals or officials pursuing such proceedings. Without any definition of the "criminal proceeding," the Republic is without information sufficient to admit or deny the Request.

Venezuela must respond to RFA No. 18 because it is neither vague nor overbroad.  The request specifically asks to admit or deny whether there has ever been any criminal proceeding involving Trans Benz.  Venezuela is a country that can very well search its public and/or private records to determine if any proceeding in any Venezuelan criminal court has been initiated against Trans Benz.  Thus, Venezuela is well equipped to respond to RFA No. 18 and must be compelled to do so.

### B.  Responses to Interrogatories

### a.  ROG No. 3

ROG No. 3 states: For each request for admission that you did not admit, explain your answer.

Venezuela's Response: Subject to and without waiver of any objection, the Republic incorporates the responses provided to Plaintiffs' First Set of Admissions.

Even though Venezuela incorporates its responses to the RFAs, Venezuela does not adequately explain why it did not admit many of the RFAs propounded by Plaintiffs. Specifically, RFA No. 5 asks Venezuela to admit that "Venezuela holds 100% of the shares in Petroquimica de Venezuela, S.A. ("Pequiven"), a company incorporated in Venezuela." In response, Venezuela stated: "Denied. Venezuela is not the 100% holder of Pequiven shares." Venezuela's response does not adequately explain why Venezuela denied RFA No. 5. Venezuela must explain why it does not own 100% shares of Pequiven. For example, to adequately respond to this interrogatory, Venezuela must explain how many shares of Pequiven it holds and who else holds shares to Pequiven.

### b. ROG No. 4

ROG No. 4 states: Explain in detail the legal basis for conducting warrantless searches of Marivelca on August 8, 2008, and October 20, 2008.

Venezuela's Response: Subject to and without waiver of any objection, the separate and independent roles taken by the different branches of government means that the Republic is not in a position to address issues related to prosecutorial discretion exercised by the Prosecutor's Office of the Public Ministry for the State of Zulia. The Republic does not have control over the officials from the State of Zulia sufficient to provide an answer to this Interrogatory.

Venezuela must adequately answer ROG No. 4. Venezuela is in the position to determine its reason for conducting warrantless searches of Marivelca on the specified dates. Venezuela has

access to documentation and persons under its sovereign with the information required to respond to this interrogatory.  In fact, the agencies responsible for the warrantless searches work for and under the laws of Venezuela.  Consequently, Venezuela has sufficient control over the officials from the State of Zulia to provide an answer to ROG No. 4.

### c.  ROG No. 5

ROG No. 5 states: Explain in detail the findings of the warrantless searches of Marivelca conducted on August 8, 2008, and October 20, 2008.

Venezuela's Response: Subject to and without waiver of any objection, the separate and independent roles taken by the different branches of government means that the Republic is not in a position to address issues related to prosecutorial discretion exercised by the Prosecutor's Office of the Public Ministry for the State of Zulia.

For the reasons set forth above in response to Venezuela's failure to adequately respond to ROG No. 4, Venezuela must be compelled to provide a better answer to ROG No. 5.

### d.  ROG No. 7

ROG No. 7 states: Explain in detail the factual basis and evidence supporting the element of intent necessary for charging Plaintiffs with (i) illicit storage of controlled chemical substances pursuant to the Drug Trafficking Law, and (ii) criminal conspiracy pursuant to Article 6 of the Organic Law Against Organized Crime.

Venezuela's Response: Subject to and without waiver of any objection, the separate and independent roles taken by the different branches of government means that the Republic is not in a position to address issues related to prosecutorial discretion exercised by the Prosecutor's Office of the Public Ministry for the State of Zulia.

For the reasons set forth above in response to Venezuela's failure to adequately respond to ROG No. 4, Venezuela must be compelled to provide a better answer to ROG No. 7.

### C. Responses to Requests for Production

Plaintiffs propounded thirteen (13) RFPs on Venezuela.  Despite objecting to twelve (12) RFPs, Venezuela indicated in its written response that it would produce non-privileged responsive documents in its possession, custody and control.  However, to date, Venezuela has merely produced 28 pages of documents in response to Plaintiffs' RFPs.  *See* **Exhibit A**, Venezuela's production of documents.  Such minimal production is only partially responsive to RFPs Nos. 1 and 2.  Consequently, Venezuela must be compelled to produce responsive documents to RFPs Nos. 3-13, and any remaining documents responsive to RFPs Nos. 1 and 2.

**WHEREFORE,** Plaintiffs respectfully request this Court enter an Order: (i) granting this Motion; (ii) compelling Venezuela to produce better answers to Plaintiffs' jurisdictional discovery requests within fourteen (14) days; and (iii) granting any further relief the Court deems just and proper.

### CERTIFICATE OF CONFERENCE

On April 24, 2019, undersigned counsel attempted to confer with counsel for Venezuela with respect to this Motion, but because of calendaring and short deadlines, were unable to have a meaningful meet and confer.

Dated:  April 24, 2019.                          Respectfully submitted,

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
777 Arthur Godfrey Rd., Suite 402
Miami Beach, Florida 33140
E-mail: rodrigo@rdasilvalaw.com
Telephone:     (305) 615-1434

Facsimile:      (305) 615-1435

By: /s/ *Rodrigo S. Da Silva*
     Rodrigo S. Da Silva, Esq.
     Florida Bar No. 0088600
     *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 24, 2019, I electronically filed the foregoing document with the Clerk of the Court by CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of the Notice of Electronic Filing generated by CM/ECF, or in some other authorized manner for those counsel who are not authorized to receive electronic Notices of Electronic Filing.

Dated: Miami, Florida
     April 24, 2019

                 By: /s/ *Rodrigo S. Da Silva*
                     Rodrigo S. Da Silva, Esq.

17

# EXHIBIT A



1111 Brickell Ave, Suite 2715    1875 I Street, NW, 5th Floor
Miami, FL 33131                  Washington, D.C. 20006
+1 305 856 7723                  +1 202 624 3165

www.gstllp.com

**SENT BY EMAIL ONLY**

Mr. Rodrigo S. Da Silva
Law Offfices of Rodrigo S. Da Silva, P.A.
777 W. 41 Street, Suite 402
Miami Beach, FL 33140
rodrigo@rdasilvalaw.com

March 23, 2019

RE: *Comparelli et. al. v. República Bolivariana de Venezuela, et. al.*
*Case No. 14-cv-24414*

Dear Rodrigo,

Pursuant to the Court's Order, dated January 23, 2019 [D.E. 121], the Republic is attaching documents [R000001-R000028] in response to Plaintiff's First Set of Production Requests (the "Requests"). The documents are produced in response to Requests No. 1 and 2, although they may also be responsive to other Requests. The Republic will provide documents on a rolling basis, as documents are located and reviewed.

Regards,

**Quinn Smith**
Counsel for the
República Bolivariana de Venezuela

1



**REPÚBLICA BOLIVARIANA DE VENEZUELA**
**MINISTERIO DEL PODER POPULAR PARA**
**RELACIONES INTERIORES JUSTICIA Y PAZ**
**OFICINA NACIONAL ANTIDROGAS**
**SERVICIO NACIONAL DE ADMINISTRACIÓN Y ENAJENACIÓN**
**DE BIENES ASEGURADOS O INCAUTADOS, CONFISCADOS Y**
**DECOMISADOS**





SNB-DG-AL 00 14 49

Caracas, 19 OCT 2010

Ciudadano:
**HENRY RODRIGUEZ FACCHINETTI**
**GERENTE GENERAL DE LITIGIO**
**PROCURADURIA GENERAL DE LA REPUBLICA**
Su Despacho.-

*RECEPCIÓN CORRESPONDENCIA Recibido por... Hora... Firma... Entregado por... 2 2 OCT 2010*

Tengo el agrado de dirigirme a usted, en la oportunidad de hacerle llegar un cordial saludo Revolucionario, Socialista, Antiimperialista y Chavista en nombre de todos los hombres y mujeres que laboran en el Servicio Nacional de Administración y Enajenación de Bienes Asegurados o Incautados, Confiscados y Decomisados (SNB), extensivo hasta su distinguido equipo de trabajo,

En este sentido, en relación al punto i) hacemos de su conocimiento que la administración especial que mantenía la empresa PETROQUIMICA DE VENEZUELA, S.A., (PEQUIVEN) con la ONA a través del SNB, de mutuo acuerdo fue dada por terminada en fecha 13 de enero de 2017, tal y como se puede evidenciar en el acta de finiquito signada con las letras y números: ONA-SNB-DAB-INMUEBLES-2017-003, la cual se anexa a la presente comunicación y actualmente se encuentra asignada bajo administración especial al Ministerio del Poder Popular Para las Comunas y Movimientos Sociales (MPPCMS), todo ello con fundamento a lo dispuesto en el artículo 184 de la Ley Orgánica de Drogas.

Por otra parte, en lo que se refiere al punto ii) se sugiere consultar directamente al Ministerio Público, ello en virtud que este órgano no es parte en el

R000001

00 14 49                                                          9 OCT 2018

mencionado proceso penal, como es de su conocimiento, este es un órgano desconcentrado creado mediante Decreto Presidencial N° 8013, dependiente de la Oficina Nacional Antidrogas (ONA), encargado de la planificación, organización, funcionamiento, administración, disposición, liquidación, enajenación, custodia, inspección, vigilancia, procedimientos y control dentro y fuera del país, de los bienes muebles e inmuebles, capitales, naves y aeronaves, vehículos automotores, obras de arte y joyas, semovientes, activos y haberes bancarios, acciones y derechos asignados por los Tribunales Penales del país, conforme a la Ley Orgánica de Drogas.

Finalmente, en cuando al punto iii) se procede a remitir mediante la presente comunicación certificación de la copias fotostáticas contentivas de nueve (09) folios, cuyos originales corresponden a la documentación que reposa en los archivos de este Servicio Nacional de Bienes. En cuanto a los demás soportes que conforman el expediente se recomienda solicitar copia al tribunal de la causa.

Aprovecho la oportunidad para expresarle en nombre propio y de todo el personal de esta institución el mayor de los apoyo.

Quedo a su disposición para cualquier información adicional

Atentamente



**CARLOS ALBERTO MARTÍNEZ RODRÍGUEZ**
Director General Encargado del Servicio Nacional de Administración y Enajenación de Bienes
Asegurados o Incautados, Confiscados y Decomisados (SNB)
Resolución N° 054 de fecha 15/03/2018,
Gaceta Oficial N° 41.361 de fecha 15/03/2018.

Anexo: Anexo los soportes indicados
CAM/gpr

Servicio Nacional de Administración y Enajenación de Bienes Asegurados o Incautados, Confiscados y Decomisados (SNB)  Calle Colibrí
con avenida Nicolás Copérnico, quinta La Loma, urbanización Valle Arriba. Caracas-Venezuela.
Teléfonos: (58) 0212-9629004, Rif-20009754-0, www.snb.gob.ve.

R000002

Belkys C. Benavides
Abogado
Inprz. N° 40.676

ACTA DE ASAMBLEA GENERAL EXTRAORDINARIA DE LA
SOCIEDAD MERCANTIL MARIVELCA, C.A. Hoy diecisiete (17) de Enero
de 2012, reunidos los ciudadanos, **SAUL AMELIACH**, venezolano, mayor
de edad, de este domicilio, titular de la Cédula de Identidad N° V-
**7.107.576**, en su carácter de **Presidente de PETROQUÍMICA DE
VENEZUELA S.A. (PEQUIVEN)**, Sociedad Mercantil Anónima, con
domicilio en la ciudad de Caracas, Distrito Capital, inscrita por ante el
Registro Mercantil Primero de la Circunscripción Judicial del Distrito
Federal y Estado Miranda el día 1 de Diciembre de 1977, bajo el N° 35,
Tomo 148- A, cuyo documento Constitutivo Estatutario ha sido objeto de
varias reformas, siendo la última de ellas inscrita por ante el Registro
Mercantil Segundo de la Circunscripción Judicial del Distrito Capital y
Estado Miranda, en fecha 26 de Marzo de 2010, bajo el N° 10, Tomo 67-A
Sgdo., debidamente designado para dicho cargo según nombramiento
realizado mediante Decreto de la Presidencia de la República N° 7.766,
publicado en la Gaceta Oficial de la República Bolivariana de Venezuela N°
39.539, de fecha 27 de Octubre de 2010 y designado para dicho cargo
según consta de Acta de Asamblea General Extraordinaria de Accionistas
celebrada en fecha primero (01) de Noviembre de 2010 e inscrita por ante
la Oficina de Registro Mercantil Segundo de la Circunscripción Judicial del
Distrito Capital y Estado Miranda, en fecha 17 de Noviembre de 2010, bajo
el N° 21, Tomo 371-A Sgdo; **PEDRO JOSE LUGO GOMEZ**, venezolano,
mayor de edad, de este domicilio, titular de la Cédula de Identidad No. V-
9.500.397; **JOSE LUIS PEREZ**, venezolano, mayor de edad, de este
domicilio, titular de la Cédula de Identidad No. V-11.671.141; **KERTIN
RANGEL**, venezolana, mayor de edad, de este domicilio, titular de la
Cédula de Identidad No. V-7.308.450; **SAÚL SILVA RODRIGUEZ**,
venezolano, mayor de edad, de este domicilio, titular de la Cédula de
Identidad No. V-3.806.275; **MARIO BELLO**, venezolano, mayor de edad,
de este domicilio, titular de la Cédula de Identidad No. V-4.056.392;



R000003

DOUGLAS JIMENEZ, venezolano, mayor de edad, de este domicilio, titular de la Cédula de la Cédula de Identidad Nº 4.985.837 y como invitado el ciudadano JOSE LUIS FERREIRA, venezolano, mayor de edad, de este domicilio, titular de la Cédula de Identidad No. 8.622.430, en la sede de MARIVELCA, C.A. ubicada en la Intercomunal Los Guayos Guacara, Sector El Nepe, Municipio Guacara, Estado Carabobo. En virtud de la designación como **Administrador Especial** conferida a PETROQUÍMICA DE VENEZUELA, S.A. (PEQUIVEN) por parte de la OFICINA NACIONAL ANTIDROGAS, de fecha 26 de Noviembre de 2010 (la cual se presenta y se anexa copia simple) para celebrar la siguiente Asamblea General Extraordinaria. Seguidamente se sometió a consideración de la Asamblea los puntos del orden del día: PRIMERO: Considerar la renuncia al Cargo de Gerente General que venia desempeñando en la compañía el ciudadano Douglas Jiménez. SEGUNDO: Nombramiento de un nuevo Gerente General. De inmediato se pasa a considerar el **Primer punto** del orden del día, toma la palabra el ciudadano DOUGLAS JIMENEZ, antes identificado, y presenta formal renuncia al cargo de Gerente General que venia desempeñando en la empresa. La Asamblea acordó por unanimidad aceptar la renuncia dándosele un amplio finiquito a todas sus actuaciones durante el desempeño de su cargo. De inmediato se pasa a considerar el **Segundo Punto** del orden del día, por cuanto queda vacante el cargo de Gerente General se nombra al ciudadano JOSE LUIS FERREIRA, antes identificado, para ejercer dicho cargo. Sometida a consideración de la Asamblea, la misma aprueba por unanimidad el nuevo nombramiento. No habiendo nada más que tratar, se procede a autorizar a los ciudadanos JOSE LUIS FERREIRA, antes identificado, para certificar copia de la presente acta y BELKYS BENAVIDES, venezolana, mayor de edad, titular de la Cédula de Identidad Nº V-7.766.548, Abogada en ejercicio, inscrita en el Inpreabogado bajo el Nº 40.676, domiciliada en Valencia, Estado Carabobo, para que tramite ante la Oficina de Registro Mercantil correspondiente, el Registro y Publicación de esta Acta de Asamblea de MARIVELCA, C.A., en los términos en que ha sido aprobado. **Saúl Ameliach** (Fdo.), **Pedro José Lugo Gómez** (Fdo.), **José Luis Pérez** (Fdo.), **Kertin Rangel** (Fdo.), **Saúl Silva Rodríguez** (Fdo.), **Mario Bello**

(Fdo.), **Douglas Jiménez** (Fdo.); **Jose Luis Ferreira** (Fdo.). Y Yo, **JOSE LUIS FERREIRA**, antes identificado, en mi carácter de Gerente General, **certifico** que el acta que antecede es copia fiel y exacta de su original.





C.I. 4.202.890
Abogado I

MUNICIPIO VALENCIA, 6 DE FEBRERO DEL AÑO DOS MIL DOCE (FDOS.) BELKYS CECILIA BENAVIDES QUINTERO, Abogado RAFAEL A. GIMENEZ D. SE EXPIDE LA PRESENTE COPIA CERTIFICADA DE PUBLICACIÓN SEGÚN PLANILLA NO. : 315.2012.1.3247

Abogado RAFAEL A. GIMENEZ D.
**Registrador Mercantil Segundo**



**ACTA DE ADMINISTRACIÓN ESPECIAL**



Entre la República Bolivariana de Venezuela por órgano del **MINISTERIO DEL PODER POPULAR PARA LAS COMUNAS Y MOVIMIENTOS SOCIALES (MPPCMS)**, representada en este Acto por el ciudadano ministro **ARISTOBULO ISTURIZ ALMEIDA**, venezolano, mayor de edad, de este domicilio, titular de la cédula de Identidad N° V.-630.328, quien a los efectos del presente documento se denominará **"EL MINISTERIO"** por una parte; y por la otra el **SERVICIO NACIONAL DE ADMINISTRACION Y ENAJENACION DE BIENES ASEGURADOS O INCAUTADOS, CONFISCADOS Y DECOMISADOS (SNB)**, servicio desconcentrado especializado, creado mediante Decreto N° 8.013, publicado en Gaceta Oficial de la República Bolivariana de Venezuela N° 39.602, de fecha 25 de enero de 2011, e inscrito en el Registro de Información Fiscal (RIF) bajo el N° G-20009754-0, adscrito a la **OFICINA NACIONAL ANTIDROGAS (ONA)**, como órgano rector en la materia, representado por el ciudadano **JOSE RAMON CASTILLO GARCIA**, venezolano, mayor de edad, titular de la cédula de identidad N° V-9.628.320 y de este domicilio, actuando en su carácter de Presidente del Consejo Directivo del **SERVICIO NACIONAL DE ADMINISTRACION Y ENAJENACION DE BIENES ASEGURADOS O INCAUTADOS, CONFISCADOS Y DECOMISADOS (SNB)**, ya identificado, nombramiento que consta en Resolución Ministerial N°151 de fecha 07 de noviembre de 2016, publicada en Gaceta Oficial de la República N° 41.025 del mismo día, mes y año,. y suficientemente facultado para este acto, el cual y a los efectos del presente documento se denominará **"EL SNB"** acuerdan suscribir la presente **"ACTA DE ADMINISTRACIÓN ESPECIAL"** de carácter temporal conferida por **"EL SNB"**, la cual se regirá bajo los términos y condiciones que a continuación se señalan: **PRIMERA:** De conformidad con lo establecido en el artículo 183 de la Ley Orgánica de Drogas, **"LA ONA"** a través de **"EL SNB"** tiene a su disposición mediante Acta de recuperación N° **ONA.ABA-CARA-81-2010**, una Empresa con las siguientes características: **MARIVELCA, C.A.**, Inscrita en el Registro Mercantil Segundo de la

R000007

Circunscripción Judicial del estado Carabobo, en fecha 13 de septiembre de 1990, bajo el N° 6, Tomo: 18-A, ubicada en la carretera Nacional, Guacara los Guayos, Zona Industrial "El NEPE", Municipio Guacara, estado Carabobo, que contempla un inventario de bienes que hacen parte de la misma conforme inventario (se anexa Inventario), la cual y a los efectos de la presente Acta de Administración Especial se denominará **"EL BIEN". SEGUNDA:** De conformidad con lo establecido en el artículo 184 *eiusdem*, **"LA ONA"** a través de **"EL SNB"** en este acto designa a **"EL MINISTERIO"** como Administrador Especial de **MARIVELCA C.A**, junto a sus bienes, materiales y equipos pertenecientes a esta sociedad, constituidos por los bienes que se especifican en inventario anexo al presente instrumento y que declara recibir conforme en este acto, en las condiciones descritas en el Acta de Entrega e Inventario, la cual se consideran parte integrante de la presente Acta de Administración Especial, obligándose a preservar el buen estado de **"EL BIEN"** y dar mantenimiento a todo lo relacionado con servicios seguridad y sanidad. **TERCERA: "EL MINISTERIO"**, se compromete a mantener el giro comercial de esta sociedad mercantil, a fin de trabajar en pro de la buena gestión de las políticas públicas, emanadas del Órgano rector en materia de drogas, por lo que **"EL SNB"** autoriza expresamente a **"EL MINISTERIO"** para administrar dicha sociedad y a dar uso comercial a los equipos patrimonio de la misma, garantizando su conservación, mantenimiento y sana administración. **CUARTA: "EL MINISTERIO"** declara que **"EL BIEN"**, asignado deberá mantener la operatividad de explotación del ramo comercial que tiene la empresa en su objeto y que ejercerá dicha administración diligentemente como un buen padre de familia, no debiendo servirse de **"EL BIEN"**, para un uso distinto al descrito en la presente cláusula. **QUINTA: "EL MINISTERIO"** permitirá a **"EL SNB"** en todo momento la inspección física de **"EL BIEN"** dada su naturaleza jurídica y condición legal, así como, a realizar las auditorías del inventario y todo lo que represente la administración, manejo y objeto comercial de la empresa. **SEXTA: "EL MINISTERIO"** se compromete a no realizar modificaciones y/o mejoras a EL BIEN. En el caso, que **"EL MINISTERIO"** quisiera realizar cualquier modificación o mejora en EL BIEN dado en administración especial, deberá obtener el previo consentimiento por escrito de EL SNB, previa presentación del proyecto respectivo, siendo por cuenta de **"EL

R000008

MINISTERIO" todos los gastos que se ocasionen. En todo caso, a la terminación de la presente administración especial dichas mejoras, si existieran, quedarán en beneficio de EL BIEN, sin que "EL MINISTERIO" tenga derecho a reclamar cantidad alguna por este concepto. SEPTIMA: La presente Acta de Administración Especial se suscribe únicamente para uso exclusivo de "EL MINISTERIO", por tanto se considera "*intuito personae*", no pudiendo ceder, total o parcialmente, dar en comodato, arrendarla o disponer de cualquier forma de "EL BIEN". OCTAVA: Serán por cuenta de "EL MINISTERIO" las obligaciones y gastos derivados de la Administración de "EL BIEN", y se obliga a entregar de manera bimensual a EL SNB, un informe sobre la administración de "EL BIEN". NOVENA: Serán por única y exclusiva cuenta de "EL MINISTERIO" las obligaciones y gastos derivados de la Administración de estos bienes, así como de su plantilla de trabajadores, obligaciones laborales, fiscales y tributarias nacionales, estadales o municipales y las reparaciones de cualquier clase, así como el mantenimiento que requiera "EL BIEN", ya sean preventivos o correctivos, debiendo llevar un registro detallado de los mismos y guardar los comprobantes que comprueben que éstos han sido realizados por personal calificado, cuyos gastos causados serán por la única y exclusiva cuenta de "EL MINISTERIO". DECIMA: "EL MINISTERIO" deberá remitir un informe bimensual pormenorizado, donde incluirá la información relativa a la Cláusula Octava. Así mismo deberá reportar la renta o ingresos generados por la administración de éstos como las labores de mantenimiento ejecutadas y programadas. DECIMA PRIMERA: "EL MINISTERIO" mantendrá en plena vigencia el contrato con una empresa aseguradora de reconocida solvencia, con la cual contratará una póliza de seguro a todo riesgo sobre "EL BIEN", debiendo establecer como beneficiario a "EL SNB", dicho instrumento será remitido a la Dirección General de este Servicio en un término no mayor de quince (15) días hábiles a partir de la fecha de suscripción del presente documento. DECIMA SEGUNDA: Las Partes acuerdan que cualquier notificación de una parte a la otra debe enviarse por escrito con acuse de recibo a las siguientes direcciones: "EL MINISTERIO" (sede de la empresa MARIVELCA S.A.) carretera Nacional, Guacara los Guayos, Zona Industrial "El NEPE", Municipio Guacara, estado Carabobo, Teléfono: 0424-447-24-52/0245-571-6332.

"EL SNB": Servicio Nacional de Administración y Enajenación de Bienes Asegurados o Incautados, Confiscados y Decomisados (SNB)

Calle Colibrí con avenida Nicolás Copérnico, quinta La Loma, urbanización Valle Arriba. Caracas-Venezuela. Atención: Dirección General del SNB.

Teléfonos: (58) 0212-9629004

DÉCIMA TERCERA: Cuando así lo requiera "EL SNB", o cuando el Órgano Jurisdiccional le ordené la devolución de "EL BIEN", éste podrá en cualquier momento y sin previa notificación, dar por terminada la Administración Especial conferida, mediante un Acta de finiquito emitida por la misma, por lo que "EL MINISTERIO" deberá restituir inmediatamente a "EL SNB", la detentación material o física de "EL BIEN" con su inventario, acompañado de un informe final y auditoría de cuentas que describa las condiciones de administración, mantenimiento y estado actual del mismo con su respectiva reseña fotográfica.

Se hacen dos (2) ejemplares de un mismo tenor y a un solo efecto, en la ciudad de Caracas, a los _Diez_ (_10_) días del mes de _Enero_ de 2017.

ARISTOBULO ISTURIZ ALMEIDA
MINISTRO

JOSE RAMON CASTILLO GARCIA
Presidente del Consejo Directivo del SNB
según Resolución N°151 de fecha 07 de noviembre de 2016
Publicada en Gaceta Oficial N°41.025 del mismo día, mes y año.



**ACTA DE FINIQUITO**



Entre el **SERVICIO NACIONAL DE ADMINISTRACION Y ENAJENACION DE BIENES ASEGURADOS O INCAUTADOS, CONFISCADOS Y DECOMISADOS (SNB)**, servicio desconcentrado especializado, creado mediante Decreto N° 8.013, publicado en Gaceta Oficial de la República Bolivariana de Venezuela N° 39.602, de fecha 25 de enero de 2011, e inscrito en el Registro de Información Fiscal (RIF) bajo el N° G-20009754-0, adscrito a la **OFICINA NACIONAL ANTIDROGAS (ONA)**, como órgano rector en la materia, representado por el ciudadano **JOSE RAMON CASTILLO GARCIA**, venezolano, mayor de edad, titular de la cédula de identidad N° V-9.628.320 y de este domicilio, actuando en su carácter de Presidente del Consejo Directivo del **SERVICIO NACIONAL DE ADMINISTRACION Y ENAJENACION DE BIENES ASEGURADOS O INCAUTADOS, CONFISCADOS Y DECOMISADOS (SNB)**, ya identificado, nombramiento que consta en Resolución Ministerial N°151 de fecha 07 de noviembre de 2016, publicada en Gaceta Oficial de la República N° 41.025 del mismo día, mes y año y suficientemente facultado para este acto, el cual y a los efectos del presente documento se denominará **"EL SNB"** por una parte; y por la otra **PETROQUIMICA DE VENEZUELA, S.A. (PEQUIVEN)**, representado en este acto por el ciudadano, **RUBEN ALFREDO AVILA AVILA**, venezolano, mayor de edad, de este domicilio y titular de la cedula de identidad N° V- 8.023.489 en su carácter de **PRESIDENTE**, la cual y a los efectos del presente documento se denominará **"LA INSTITUCION"** declaran:

**PRIMERA:** De conformidad con lo establecido en el artículo 184 de la Ley Orgánica de Drogas, **LA ONA** designó a **"LA INSTITUCION"**, como administrador especial de Un (01) Inmueble Tipo Galpón ubicado en la carretera Nacional, Guacara – Los Guayos, Zona Industrial El Nepe, Municipio Guacara del Estado Carabobo, signada con el Acta de Incautación N° CARA-081-2010.

**SEGUNDA:** **LA ONA** a través de **EL SNB** y **LA INSTITUCION**, de mutuo y amistoso acuerdo, dan por terminada la Administración Especial del bien inmueble antes

ONA-SNB-DAB-INMUEBLES-2017-003

R000

descrito; por lo que **"LA INSTITUCION"** procede a su restitución de manera inmediata.

**TERCERA: LA INSTITUCION** deberá elaborar y entregar un informe de gestión y rendición de cuentas de la administración especial del bien asignado, donde expresará el inventario, estado de conservación y mantenimiento del bien objeto de administración especial, así como cualquier otra condición relacionada al mismo, dentro del lapso de diez (10) días hábiles contados a partir de la suscripción de la presente acta. Por su parte **EL SNB** se reserva el derecho de aprobar o desaprobar el referido informe.

Se hacen dos (2) ejemplares de un mismo tenor y a un solo efecto, en la ciudad de Caracas, a los trece (13) día del mes de enero de 2017.

**JOSE RAMON CASTILLO GARCIA**
Presidente del Consejo Directivo del SNB
Según Resolución N° 151 de fecha 07 de noviembre de 2016
Publicada en Gaceta Oficial N° 41.025 del mismo día, mes y año.

**RUBEN ALFREDO AVILA AVILA**
PETROQUIMICA DE VENEZUELA, S.A. (PEQUIVEN) en
**LA INSTITUCIÓN**


PETROQUIMICA
DE VENEZUELA, S.A.
28 FEB 2017

R000012

A-20

Entre la **OFICINA NACIONAL ANTIDROGAS**, órgano adscrito al Ministerio del Poder Popular para Relaciones Interiores y Justicia de la República Bolivariana de Venezuela, creado mediante Decreto Nº 4220 publicado en Gaceta Oficial de la República Bolivariana de Venezuela Nº 38.363 de fecha 23 de enero de 2006, el cual y a los efectos del presente documento se denominará **LA ONA**, representada en este acto por su Presidente con rango de Director General (E), ciudadano **NÉSTOR LUIS REVEROL TORRES**, venezolano, mayor de edad, de este domicilio y titular de la Cédula de Identidad Nº V-7.844.507, nombramiento que consta en Resolución Ministerial Nº 063, publicada en Gaceta Oficial de la República Bolivariana de Venezuela Nº 38.622 de fecha 08 de febrero de 2007, actuando en ejercicio de las facultades establecidas en el numeral 8 del artículo 7 del Decreto Nº 4220 y suficientemente autorizado para la suscripción del presente documento, según se evidencia en delegación de firma contenida en el ordinal 2 del artículo 2 de la citada Resolución Nº 063, por una parte y por la otra, **CORPORACIÓN PETROQUÍMICA DE VENEZUELA, S.A. (PEQUIVEN)**, representado en este acto por el ciudadano **SAUL AMELIACH**, venezolano, mayor de edad, de este domicilio, titular de la Cédula de Identidad Nº V-7.107.576, en su carácter de Presidente de **(PEQUIVEN)** Según consta en Gaceta Oficial de la República Bolivariana de Venezuela Nº 380.532, de fecha 27 de Octubre del 2010, la cual y a los efectos del presente documento se denominará **"LA INSTITUCIÓN"**, acuerdan suscribir la presente **"ACTA DE ADMINISTRACIÓN ESPECIAL"** conferida por **"LA ONA"**, la cual se regirá bajo los términos y condiciones que a continuación se señalan:



PRIMERA: De conformidad con lo establecido en el artículo 183 de la Ley Orgánica de Drogas, **"LA ONA"** tiene a su disposición mediante Acta de Recuperación Nº **ONA-ABA-CARA-81-2010**, una Empresa con las siguientes características: **MARIVELCA, C.A.** Inscrita bajo el Registro Mercantil Segundo de la Circunscripción Judicial del Estado Carabobo, en fecha 13 de Septiembre de 1990, Bajo el Nº 5 Tomo 18-A, Ubicada en la carretera Nacional, Guácara – Los Guayos, Zona Industrial "EL NEPE" Municipio Guácara del Estado Carabobo. (SE ANEXA INVENTARIO), el cual y a los efectos de la presente Acta de Administración Especial se denominará **"EL BIEN"**.



R000013

SEGUNDA: De conformidad con lo establecido en el artículo 184 ejusdem, "LA ONA" en este acto designa a "LA INSTITUCIÓN" Administrador Especial de "EL BIEN" descrito en la Cláusula Primera, la cual declara recibirlo en este acto, en buen estado de mantenimiento y conservación, para su guarda, custodia, uso, conservación y mantenimiento.

TERCERA: "LA INSTITUCIÓN" declara que "EL BIEN", asignado deberá mantener la operatividad de explotación del ramo comercial que tiene la empresa en su objeto y además podrá ser utilizado para las labores de prevención, control de los delitos tipificados en la Ley Orgánica de Drogas, sus delitos conexos. El ejercicio de dicha administración deberá ejercerla como un buen padre de familia, y no servirse de "EL BIEN", para un uso distinto al descrito en la presente cláusula; en caso que "LA INSTITUCIÓN" requiera utilizar "EL BIEN" para un uso distinto, al aquí designado deberá tener la plena autorización de la "LA ONA" y dejarse establecido en un Acta General de asamblea extraordinaria.

El no cumplimiento de esta disposición acarreara el ejercicio de las sanciones y/o responsabilidades civiles, penales y administrativas correspondientes.

CUARTA: "LA INSTITUCIÓN" está obligada a permitir a "LA ONA" en todo momento la inspección física de "EL BIEN".

QUINTA: La presente Acta de Administración Especial se suscribe únicamente para uso exclusivo de "LA INSTITUCIÓN", por tanto se considera "intuito personae", no pudiendo ceder, total o parcialmente, dar en comodato, arrendarla o disponer de cualquier forma de "EL BIEN".

SEXTA: Queda a cargo de "LA INSTITUCIÓN" las obligaciones y gastos derivados de la Administración de "EL BIEN".

SÉPTIMA: Serán por única y exclusiva cuenta de "LA INSTITUCIÓN", las reparaciones y mantenimiento que requiera "EL BIEN", ya sean preventivos o correctivos, debiendo llevar un registro detallado de los mismos y guardar los comprobantes que comprueben que estos han sido realizados por personal calificado, cuyos gastos causados serán por la única y exclusiva cuenta de "LA INSTITUCIÓN", no pudiendo solicitar a "LA ONA" reembolso alguno por dichos gastos en ningún momento.

OCTAVA: "LA INSTITUCIÓN" deberá remitir un informe trimestral pormenorizado, donde incluirá la información relativa a la Cláusula Séptima,

ONA-ABA-INMUEBLES-2010-039

R000014

esto es sobre el estado estructural de "EL BIEN", y las labores de mantenimiento ejecutadas y programadas.

**NOVENA:** "LA INSTITUCIÓN" responderá, cuando use el bien indebidamente, o demore su restitución, a menos que pruebe que el deterioro, demora o perdida, ha sobrevenido por caso fortuito o fuerza mayor, asimismo responde cuando "EL BIEN" perece, y se demuestre que pudo evitar la pérdida, usando una cosa propia, en vez de aquella y cuando en la alternativa de salvar "EL BIEN", salvo la suya, prefiriéndola deliberadamente.

**DÉCIMA:** Cuando así lo requiera "LA ONA", o cuando el Órgano Jurisdiccional le ordené la devolución de "EL BIEN", está podrá en cualquier momento y sin previa notificación dar por terminada la Administración Especial conferida mediante un Acta de finiquito emitida por la misma, por lo que "LA INSTITUCIÓN" deberá restituir a "LA ONA", la detentación material o física de "EL BIEN", acompañado de un informe final que describa las condiciones de mantenimiento y estado actual del mismo con su respectiva reseña fotográfica.

Se hacen dos (2) ejemplares de un mismo tenor y a un solo efecto, en la ciudad de Caracas, el Veintiséis (26) de Noviembre del 2010.



NÉSTOR LUIS REVEROL TORRES
OFICINA NACIONAL ANTIDROGAS
(ONA)

SAÚL AMELIACH
CORPORACION PETROQUIMICA DE
VENEZUELA, S.A. (PEQUIVEN)

NLRT/JRCG/SAVC.-

ONA-ABA-INMUEBLES-2010-089

R000015

R000016





N° RIF- G 20000001-5

N° RIF-G-20008889-3

N° **011504**

Caracas,

**Ciudadano (a):**
**HENRY RODRÍGUEZ FACCHINETTI**
**GERENTE GENERAL DE LITIGIO**
**PROCURADURÍA GENERAL DE LA REPÚBLICA**
**SU DESPACHO.**

0 8 OCT 2018

Con el compromiso histórico de fortalecer y llenar de fuerza transformadora a la Democracia Revolucionaria que lidera nuestro Presidente Nicolás Maduro Moros, reciba un cordial saludo bolivariano y chavista, extensivo a todo su equipo.

Tengo el agrado de dirigirme a usted, en esta oportunidad de dar respuesta a la comunicación N° 10997 de fecha 02/10/2018, recibida por esta Dirección el día 03/10/2018, y en relación a su contenido me permito informarle, de conformidad con lo establecido en el artículo 54 de la Léy Orgánica de Procedimientos Administrativos que los ciudadanos citados a continuación **"REGISTRAN MOVIMIENTOS MIGRATORIOS"** en consecuencia se anexa certificado de los registros.

| N° | NOMBRES Y APELLIDOS | CÉDULA DE IDENTIDAD |
|----|---------------------|---------------------|
| 1 | CARMINA COMPARELLI DE DELGADO | E.- 957.426 |
| 2 | FREDDY ERNESTO LOPEZ COMPARELLI | V.- 7.135.676 |
| 3 | JULIO CESAR DELGADO COMPARELLI | V.- 15.745.759 |
| 4 | LORYELENA DELGADO COMPARELLI | V.- 15.745.760 |

Asimismo se le sugiere en lo sucesivo especificar el periodo que desea verificar en cada comunicación.

Sin otro particular a que hacer referencia, quedo a sus gratas órdenes.

**Bolivarianamente,**



**MSc. JULIO ERNESTO CASTELLANOS**
**DIRECTOR (E) DE MIGRACIÓN**
*Providencia Administrativa N° 039 de fecha 31 de julio de 2018*
*"Capacidad, eficiencia y eficacia, orientadas a la satisfacción de las necesidades de nuestro pueblo, son los objetivos supremos de nuestra Revolución."*
*Hugo Chávez Frías*

TC/Ie/bohan




**Oficina de Planificación, Presupuesto**
**Organización y Sistemas,**

Servicio Administrativo de Identificación, Migración y Extranjería,
República Bolivariana de Venezuela. Tlf. 0800 – SAIME00 / 0212 – 484-7968
(www.saime. gob.ve)Avenida Baralt, Edificio 1000 Distrito Capital- Caracas,

DIGE-FOR-0006/06-15

| Servicio Administrativo de Identificación, Migración y Extranjería | Ministerio del Poder Popular para las Relaciones Interiores y Justicia | Gobierno Bolivariano

# REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

**Nombre del ciudadano:** Carmina Comparelli De Delgado  
**Cédula:** 957426    **Letra:** E

**IMPRESIÓN** 08/10/2018  
**OFICINA:** Sede Central

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC | TIPO DE VISA | FECHA TRÁMITE | NÚMERO DE VUELO | AEROLÍNEA | SELLO | PAÍS ORIGEN | CIUDAD ORIGEN | PAÍS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Salida | AA4609694 | Pasaporte | | 24/03/2010 8:05:00 | COA1667 | Continental | 1-210 | VEN | Maiquetia | USA | Houston Tx |
| Entrada | AA4609694 | Pasaporte | Turista | 14/12/2009 6:21:00 | COA1666 | Continental | N268-327 | USA | Houston Tx | VEN | Maiquetia |
| Salida | AA4609694 | Pasaporte | | 07/11/2009 8:30:00 | MXA374 | Mexicana Aviacion | 00221 | VEN | Maiquetia | MEX | Ciudad Mexico |
| Salida | AA4609694 | Pasaporte | | 12/10/2009 17:10:00 | DLH535 | Lufthansa | 0C2A2-A2C2 | VEN | Maiquetia | DEU | Frankfurt |
| Entrada | 263785W | Pasaporte | Residente | 01/04/2009 5:17:00 | COA1666 | Continental | 268-302 | USA | Houston Tx | VEN | Maiquetia |
| Entrada | 263785W | Pasaporte | Residente | 12/10/2008 14:45:00 | IBE6701 | Iberia | APOYO7 | ESP | Madrid | VEN | Maiquetia |
| Entrada | 263785W | Pasaporte | Residente | 02/04/2008 5:18:00 | COA1666 | Continental | XXX27 | USA | Houston Tx | VEN | Maiquetia |
| Entrada | 263785W | Pasaporte | Residente | 25/10/2007 14:55:00 | TAP121 | Tap | XXX14 | PRT | Lisboa | VEN | Maiquetia |
| Salida | 263785W | Pasaporte | | 19/10/2007 17:00:00 | TAP130 | Tap | XXX27 | VEN | Maiquetia | PRT | Lisboa |
| Salida | 2637854 | Pasaporte | | 04/03/2007 16:00:00 | ALV502 | Aeropostal | XX | VEN | Maiquetia | USA | Miami Fl |

**Consulta realizada por:** Yohana Virginia Laguna Montilla

Página 1 de 2

R000018

# REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

**Nombre del ciudadano:** Carmina Comparelli De Delgado

**Cédula:** 957426

**Letra:** E

**IMPRESION**
08/10/2018

**OFICINA:** Sede Central

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC | TIPO DE VISA | FECHA TRAMITE | NÚMERO DE VUELO | AEROLINEA | SELLO | PAIS ORIGEN | CIUDAD ORIGEN | PAIS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Entrada | 263785 | Pasaporte | Residente | 03/01/2006 15:35:00 | AFR460 | Air France | | FRA | Paris | VEN | Maiquetia |
| Salida | 263785W | Pasaporte | | 23/12/2005 18:10:00 | AFR461A | Air France | | VEN | Maiquetia | FRA | Paris |
| Entrada | 263785W | Pasaporte | Residente | 01/10/2005 15:05:00 | AZA696 | Alitalia | | ITA | Roma | VEN | Maiquetia |
| Salida | 263785W | Pasaporte | | 25/09/2005 16:10:00 | AZA697 | Alitalia | | VEN | Maiquetia | ITA | Roma |



**Consulta realizada por:** Yohana Virginia Laguna Mon... Departamento de Movimientos Migratorios

Director de Migración y Zonas Fronterizas

Página 1 de 2

| Servicio Administrativo de Identificación, Migración y Extranjería | Ministerio del Poder Popular para las Relaciones Interiores y Justicia | Gobierno Bolivariano |

# REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

**Nombre del ciudadano:** Freddy Ernesto Lopez Compareili

**Cédula:** 7135676    **Letra:** V

**IMPRESIÓN**
08/10/2018

**OFICINA:** Sede Central

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC | TIPO DE VISA | FECHA TRÁMITE | NUMERO DE VUELO | AEROLINEA | SELLO | PAIS ORIGEN | CIUDAD ORIGEN | PAIS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Salida | D0456523 | Pasaporte | | 04/02/2011 9:00:00 | 2962 | Dutch Caribbean Airlines | 20682 | VEN | Valencia | ANT | Curacao |
| Entrada | D0456523 | Pasaporte | | 28/06/2010 20:30:00 | 637 | insel air | 21391 | ANT | Curacao | VEN | Valencia |
| Salida | D0456523 | Pasaporte | | 26/06/2010 7:30:00 | 630 | insel air | AHV-VHA105 | VEN | Valencia | ANT | Curacao |
| Entrada | D0456523 | Pasaporte | | 19/02/2010 22:11:00 | DAL193 | Delta Airlines | OC2A10 A2C1 | USA | Atlanta Ga | VEN | Maiquetia |
| Salida | D0456523 | Pasaporte | | 10/02/2010 8:52:00 | DAL192 | Delta Airlines | 3M4Q5-Q4M5 | VEN | Maiquetia | USA | Atlanta Ga |
| Salida | D0456523 | Pasaporte | | 13/12/2009 14:00:00 | 1207 | Avior | | VEN | Valencia | ABW | Oranjestad |
| Entrada | 111 | Pasaporte | | 07/04/2007 21:45:00 | DAL300 | Delta Airlines | 213 | USA | Atlanta Ga | VEN | Maiquetia |
| Salida | D0456523 | Pasaporte | | 04/04/2007 6:45:00 | AVA079 | Avianca | XX6 | VEN | Maiquetia | COL | Bogota |

**Consulta realizada por:** Yohana Virginia Laguna Montilla

Jefe del Departamento de Movimientos Migratorios
DIRECCION DE MIGRACION Y ZONAS FRONTERIZAS

Director de Migración y Zonas Fronterizas

Página 1 de 2

DIRECCIÓN DE MIGRACIÓN

R000020

# REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

**Nombre del ciudadano:**   Freddy Ernesto Lopez Comparelli

**Cédula:** 7135676

**Letra:** V

**IMPRESIÓN**
08/10/2018

**OFICINA:**   Sede Central

SAIME

SERVICIO ADMINISTRATIVO
IDENTIFICACIÓN
MIGRACIÓN Y
EXTRANJERÍA

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC | TIPO DE VISA | FECHA TRÁMITE | NÚMERO DE VUELO | AEROLÍNEA | SELLO | PAÍS ORIGEN | CIUDAD ORIGEN | PAÍS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Página  2   de   2**

**Consulta realizada por:**   *Yohana Virginia Laguna Montoya*

R000021

| Servicio Administrativo de Identificación, Migración y Extranjería  | Ministerio del Poder Popular para las Relaciones Interiores y Justicia  | Gobierno Bolivariano

**REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:**

Nombre del ciudadano:   Julio Cesar Delgado Comparelli          Cédula:   15745759          Letra:  V

**IMPRESION**
08/10/2018

**OFICINA:**   Sede Central

SAIME
SERVICIO ADMINISTRATIVO
IDENTIFICACIÓN Y
MIGRACIÓN Y
EXTRANJERÍA

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC. | TIPO DE VISA | FECHA TRÁMITE | NÚMERO DE VUELO | AEROLINEA | SELLO | PAIS ORIGEN | CIUDAD ORIGEN | PAIS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Salida | D0742538 | Pasaporte | | 21/01/2011 12:10:00 | AAL2106 | American Airl. | 0C3A9-A3C9 | VEN | Maiquetia | USA | Miami Fl |
| Salida | D0742538 | Pasaporte | | 08/12/2010 19:45:00 | IBE6674 | Iberia | 0C7A3-A7C3 | VEN | Maiquetia | ESP | Madrid |
| Entrada | D0742538 | Pasaporte | | 04/09/2010 11:00:00 | DAE971 | Dutch Caribbean Airlines | 022 | ANT | Curacao | VEN | Maiquetia |
| Salida | D0742538 | Pasaporte | | 30/08/2010 7:00:00 | DAE2972 | Dutch Caribbean Airlines | S268-321 | VEN | Maiquetia | ANT | Curacao |
| Entrada | D0742538 | Pasaporte | | 06/09/2009 10:40:00 | 9H2961 | Dutch Caribbean Airlines | 22570 | ANT | Curacao | VEN | Valencia |
| Salida | D0742538 | Pasaporte | | 30/08/2009 11:30:00 | 9H2962 | Dutch Caribbean Airlines | | VEN | Valencia | ANT | Curacao |
| Entrada | D0742538 | Pasaporte | | 28/08/2009 14:00:00 | CM251 | Copa Airline | | PAN | Panama City | VEN | Valencia |
| Salida | 742538 | Pasaporte | | 25/08/2009 17:55:00 | CM250 | Copa Airline | AHV-VHA108 | VEN | Valencia | PAN | Panama City |
| Salida | D0742538 | Pasaporte | | 26/06/2009 8:15:00 | COA1667 | Continental | S200 | VEN | Maiquetia | USA | Houston Tx |
| Entrada | D0742538 | Pasaporte | | 01/04/2009 5:17:00 | COA1666 | Continental | 268-302 | USA | Houston Tx | VEN | Maiquetia |

Consulta realizada por:   *Yohana Virginia Laguna Montilva*

**Página  1  de  4**

R000022

# REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

**Nombre del ciudadano:**  Julio Cesar Delgado Comparelli

**Cédula:** 15745759

**Letra:** V

**IMPRESIÓN**
08/10/2018

**OFICINA:** Sede Central

**SAIME**
SERVICIO ADMINISTRATIVO
IDENTIFICACIÓN
MIGRACIÓN Y
EXTRANJERÍA

| MOVIMIENTO | No de DOCUMENTO | TIPO DE DOC | TIPO DE VISA | FECHA TRÁMITE | NÚMERO DE VUELO | AEROLÍNEA | SELLO | PAÍS ORIGEN | CIUDAD ORIGEN | PAÍS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Salida | D0742538 | Pasaporte | | 28/03/2009 8:15:00 | COA1667 | Continental | 00251 | VEN | Maiquetía | USA | Houston Tx |
| Salida | 0742538 | Pasaporte | | 02/03/2009 6:00:00 | PJMDA | Charter | 20738 | VEN | Valencia | ANT | Curacao |
| Salida | D0742538 | Pasaporte | | 31/08/2008 16:30:00 | 2109 | Avior | 22570 | VEN | Valencia | ANT | Curacao |
| Entrada | D0742538 | Pasaporte | | 26/08/2008 13:30:00 | BBR1516 | Sta Barbara | REP-4 | USA | Miami Fl | VEN | Maiquetía |
| Salida | D0742538 | Pasaporte | | 21/08/2008 13:30:00 | 1519 | Sta Barbara | A247 | VEN | Maiquetía | USA | Miami Fl |
| Entrada | D0742538 | Pasaporte | | 28/07/2008 17:30:00 | OCA413 | Aserca | 268-347 | DOM | Santo Domingo | VEN | Maiquetía |
| Salida | D0742538 | Pasaporte | | 24/07/2008 11:30:00 | OCA420 | Aserca | 268-321 | VEN | Maiquetía | DOM | Santo Domingo |
| Entrada | D0742538 | Pasaporte | | 10/05/2008 12:55:00 | AAL1937 | American Airl. | R-246 | PRI | San Juan | VEN | Maiquetía |
| Salida | D0742538 | Pasaporte | | 04/05/2008 11:15:00 | AAL2106 | American Airl. | 250 | VEN | Maiquetía | USA | Miami Fl |
| Entrada | D0742538 | Pasaporte | | 04/01/2008 17:00:00 | LPE564 | Lan Perú | 3M3Q9-Q3M9 | PER | Lima | VEN | Maiquetía |
| Salida | D0742538 | Pasaporte | | 20/12/2007 19:50:00 | LPE565 | Lan Perú | 261 | VEN | Maiquetía | PER | Lima |

**Consulta realizada por:** Yohana Virginia Laguna Montilla

**Página 2 de 4**

R000023

**SAIME**

SERVICIO ADMINISTRATIVO
IDENTIFICACIÓN
MIGRACIÓN Y
EXTRANJERÍA

## REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

**Nombre del ciudadano:** Julio Cesar Delgado Comparelli    **Cédula:** 15745759    **Letra:** V

**IMPRESIÓN**
08/10/2018

**OFICINA:** Sede Central

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC. | TIPO DE VISA | FECHA TRAMITE | NÚMERO DE VUELO | AEROLINEA | SELLO | PAÍS ORIGEN | CIUDAD ORIGEN | PAÍS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Entrada | D0742538 | Pasaporte | | 14/11/2007 15:12:00 | CMP223 | Copa Airline | 097 | PAN | Panama City | VEN | Maiquetia |
| Salida | D0742538 | Pasaporte | | 09/11/2007 16:50:00 | CMP222 | Copa Airline | | VEN | Maiquetia | PAN | Panama City |
| Entrada | 318965 | Pasaporte | | 26/12/2006 23:00:00 | BBR1526 | Sta Barbara | 3M1Q0-Q1M0 | USA | Miami FI | VEN | Maiquetia |
| Salida | 0318965 | Pasaporte | | 16/12/2006 7:00:00 | ALV500 | Aeropostal | 125 | VEN | Maiquetia | USA | Miami FI |
| Entrada | 0318965 | Pasaporte | | 11/09/2006 23:50:00 | ALV503 | Aeropostal | 109 | USA | Miami FI | VEN | Maiquetia |
| Salida | 0318965 | Pasaporte | | 03/09/2006 7:00:00 | ALV500 | Aeropostal | 227 | VEN | Maiquetia | USA | Miami FI |
| Salida | 318965 | Pasaporte | | 23/12/2005 18:10:00 | AFR461A | Air France | | VEN | Maiquetia | FRA | Paris |
| Entrada | 318965 | Pasaporte | | 27/08/2005 22:00:00 | AAL975 | American Airl. | | USA | Nueva York | VEN | Maiquetia |
| Salida | 0318965 | Pasaporte | | 23/08/2005 01:18:00 | AAL976 | American Airl. | | VEN | Maiquetia | USA | Nueva York |

**Consulta realizada por:** Yohana Virginia Laguna Montilla

Jefe de Departamento de Movimientos Migratorios

Director de...

DIRECCIÓN DE MIGRACIÓN

R000024

# REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

**Nombre del ciudadano:** Julio Cesar Delgado Comparelli

**Cédula:** 15745759

**Letra:** V

**IMPRESIÓN**
08/10/2018

**OFICINA:** Sede Central

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC | TIPO DE VISA | FECHA TRÁMITE | NÚMERO DE VUELO | AEROLÍNEA | SELLO | PAÍS ORIGEN | CIUDAD ORIGEN | PAÍS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Página 4 de 4**

**Consulta realizada por:** *Yohana Virginia Laguna Montilla*

R000025

| Servicio Administrativo de Identificación, Migración y Extranjería | Ministerio del Poder Popular para las Relaciones Interiores y Justicia | Gobierno Bolivariano

# REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

**Nombre del ciudadano:** Loryelena Delgado Comparelli    **Cédula:** 15745760    **Letra:** V

**IMPRESIÓN**
08/10/2018

**OFICINA:** Sede Central

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC. | TIPO DE VISA | FECHA TRÁMITE | NÚMERO DE VUELO | AEROLINEA | SELLO | PAIS ORIGEN | CIUDAD ORIGEN | PAIS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Entrada | D0038268 | Pasaporte | | 26/10/2010 18:15:00 | 9H2961 | Dutch Caribbean Airlines | AHV-VHA108 | ANT | Curacao | VEN | Valencia |
| Salida | D008268 | Pasaporte | | 23/10/2010 7:30:00 | 630 | insel air | 0C0V6 | VEN | Valencia | ANT | Curacao |
| Entrada | D0038268 | Pasaporte | | 11/10/2009 23:30:00 | BBR1528 | Sta Barbara | 0C8A2-A8C2 | USA | Miami Fl | VEN | Maiquelia |
| Salida | D0038268 | Pasaporte | | 02/10/2009 15:30:00 | BBR1525 | Sta Barbara | 0C7A3-A7C3 | VEN | Maiquelia | USA | Miami Fl |
| Entrada | D0038268 | Pasaporte | | 10/09/2009 23:30:00 | BBR1526 | Sta Barbara | 288 | USA | Miami Fl | VEN | Maiquelia |
| Salida | D0098268 | Pasaporte | | 16/08/2009 15:00:00 | AAL936 | American Airl. | 190 | VEN | Maiquelia | USA | Miami Fl |
| Entrada | D0038268 | Pasaporte | | 04/08/2009 14:00:00 | BBR1516 | Sta Barbara | 022 | USA | Miami Fl | VEN | Maiquelia |
| Salida | D0038268 | Pasaporte | | 01/08/2009 9:00:00 | BBR1519 | Sta Barbara | 1C0A71 A0C7 | VEN | Maiquelia | USA | Miami Fl |
| Entrada | D0038268 | Pasaporte | | 08/04/2009 17:05:00 | AVA080 | Avianca | REP-5 | COL | Bogota | VEN | Maiquelia |
| Salida | D0038268 | Pasaporte | | 04/04/2009 10:50:00 | AVA255 | Avianca | XXX11 | VEN | Maiquelia | COL | Bogota |
| Entrada | D0038268 | Pasaporte | | 22/03/2009 14:30:00 | CM251 | Copa Airline | VHA- | PAN | Panama City | VEN | Valencia |

**Consulta realizada por:** Yohana Virginia Laguna Montilla

SAIME
SERVICIO ADMINISTRATIVO
IDENTIFICACIÓN Y
MIGRACIÓN Y
EXTRANJERÍA

Página 1 de 3

R000026

# REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

**Nombre del ciudadano:** Loryelena Delgado Comparelli    **Cédula:** 15745760    **Letra:** V

**IMPRESIÓN** 08/10/2018

**OFICINA:** Sede Central

SAIME
SERVICIO ADMINISTRATIVO
IDENTIFICACIÓN
MIGRACIÓN Y
EXTRANJERÍA

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC | TIPO DE VISA | FECHA TRAMITE | NÚMERO DE VUELO | AEROLINEA | SELLO | PAIS ORIGEN | CIUDAD ORIGEN | PAIS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | AHV109 | | | | |
| Salida | D0038268 | Pasaporte | | 10/03/2009 0:00:00 | CM250 | Copa Airline | 0V2C5 | VEN | Valencia | PAN | Panama City |
| Entrada | D0038268 | Pasaporte | | 31/03/2008 18:50:00 | AAL903 | American Airl. | 268-307 | USA | Miami Fl | VEN | Maiquetia |
| Salida | D0038268 | Pasaporte | | 26/01/2008 8:30:00 | 510 | Aeropostal | 20738 | VEN | Valencia | USA | Miami Fl |
| Entrada | D0038268 | Pasaporte | | 04/01/2008 17:00:00 | LPE564 | Lan Perú | 3M3Q9-Q3M9 | PER | Lima | VEN | Maiquetia |
| Salida | D0038268 | Pasaporte | | 20/12/2007 19:50:00 | LPE565 | Lan Perú | 261 | VEN | Maiquetia | PER | Lima |
| Entrada | D0038268 | Pasaporte | | 05/11/2007 13:50:00 | ALV501 | Aeropostal | XXX18 | VEN | Miami Fl | VEN | Maiquetia |
| Salida | D0038268 | Pasaporte | | 05/06/2007 16:00:00 | AAL936 | American Airl. | | VEN | Maiquetia | USA | Miami Fl |
| Salida | D0038268 | Pasaporte | | 15/12/2006 7:00:00 | ALV500 | Aeropostal | 051 | VEN | Maiquetia | USA | Miami Fl |
| Salida | 31896 | Pasaporte | | 23/12/2005 18:10:00 | AFR461A | Air France | | VEN | Maiquetia | FRA | Paris |
| Entrada | 318966 | Pasaporte | | 27/08/2005 22:00:00 | AAL975 | American Airl. | | USA | Nueva York | VEN | Maiquetia |
| Salida | 0318966 | Pasaporte | | 22/08/2005 6:23:00 | AAL2134 | American Airl. | | VEN | Maiquetia | USA | Miami Fl |

**Consulta realizada por:** Yohana Virginia Laguna Montilla

R000027

# REPORTE DE MOVIMIENTOS MIGRATORIOS REALIZADOS POR:

Nombre del ciudadano:  Loryelena Delgado Comparelli

Cédula:  15745760

Letra:  V

IMPRESIÓN
08/10/2018

OFICINA:  Sede Central

| MOVIMIENTO | No. DE DOCUMENTO | TIPO DE DOC. | TIPO DE VISA | FECHA TRÁMITE | NÚMERO DE VUELO | AEROLINEA | SELLO | PAÍS ORIGEN | CIUDAD ORIGEN | PAÍS DESTINO | CIUDAD DESTINO |
|---|---|---|---|---|---|---|---|---|---|---|---|

Consulta realizada por:  Yohana Virginia Laguna Montilla

Jefe del Departamento de Movimientos Migratorios

Director de Migración y Zonas Fronterizas

R000028