UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 14-24414-CIV-WILLIAMS/MCALILEY

CARMINA COMPARELLI, *et al.*,

    Plaintiffs,

vs.

BOLIVARIAN REPUBLIC OF
VENEZUELA, *et al.*,

    Defendants.

_____/

**ORDER DENYING PLAINTIFFS'
MOTIONS TO COMPEL**

Plaintiffs, Carmina and Julio Comparelli, filed three Motions to Compel Jurisdictional Discovery, for Contempt of Court and the Imposition of Sanctions, against each of the Defendants: the Republic of Venezuela (the "Republic"), Petroquimica de Venezuela, S.A. ("Pequiven") and International Petrochemical Sales, Ltd. ("IPSL") (hereafter, the "Motions to Compel" or "Motions"). (ECF Nos. 204, 205, 206). The Motions are nearly identical; they ask this Court to compel each Defendant to serve better responses to two sets each of requests for production of documents, interrogatories, and requests for admission, that Plaintiffs served on Defendants, and to impose on Defendants a host of sanctions, which are detailed below. (*Id.*). Defendants filed memoranda in response to the Motions, (ECF Nos. 212, 213), and Plaintiffs filed an omnibus reply. (ECF No. 224).

On July 15, 2021, I heard oral argument on the Motions (the "hearing"). The Court and counsel discussed many issues at that time, and at the conclusion of the hearing I denied Plaintiffs' Motions to Compel. I write this Order to more fully explain why I find that Defendants do not have possession, custody or control over documents and other information responsive to Plaintiffs' discovery requests located in Venezuela and controlled by representatives of the Maduro regime.[1]

## I. Background

The central events described in this lawsuit took place in Venezuela over the course of years, beginning in 2008. Plaintiffs, who lived in Venezuela at all relevant times, owned and operated businesses there. Plaintiffs sue for damages that arise from Defendants' alleged expropriation of Plaintiffs' businesses and property, without compensation, in violation of international law, and the laws of Venezuela and this country. (Am. Compl., ECF No. 85).

### a. Subject matter jurisdiction

The Foreign Sovereign Immunities Act ("FSIA") provides that foreign states, and their agencies or instrumentalities – which, according to the Amended Complaint, includes Pequiven and IPSL – are immune from the jurisdiction of United States courts, unless one of FSIA's exceptions applies. 28 U.S.C. §§ 1604, 1605. Plaintiffs have the burden of

---

[1] At the hearing I ruled on other ancillary issues the Motions raise and I denied the Motions in all regards, with one exception: I found that to the extent Pequiven and IPSL's banks have responsive documents that Pequiven and IPSL have a right to demand from their banks, then they should ask their banks for that information. They agreed to do so. Here, I address only the central issue, identified above.

proving the applicability of a FSIA exception and thus subject matter jurisdiction. *Comparelli v. Republica Bolivariana de Venezuela*, 891 F.3d 1311, 1319 (11th Cir. 2018). Plaintiffs argue that FSIA's expropriation exception applies here and therefore this Court has jurisdiction over this suit. Defendants dispute jurisdiction and have filed motions to dismiss this action on this basis.[2]

### b. Jurisdictional discovery

The parties are engaging in jurisdictional discovery. Plaintiffs served Defendants two sets each of requests for production, interrogatories, and requests for admission. Defendants timely served responses to those discovery requests.[3] Although all Defendants produced some responsive documents and answered some interrogatories, that information was limited and came from sources other than those controlled by the Maduro

---

[2] This Court previously dismissed this action for lack of jurisdiction. (ECF No. 75). While Plaintiffs' appeal of that decision was pending, the Supreme Court, in *Bolivarian Republic of Venezuela v. Helmerich & Payne Intern. Drilling Co.*, --- U.S. ----, 137 S. Ct. 1312 (2017), laid out a new standard for a trial court's evaluation of FSIA's expropriation exception. In reliance on *Helmerich*, Eleventh Circuit reversed and remanded. *Comparelli*, 891 F.3d 1311. In that opinion, the Court of Appeals found that for Plaintiffs' claims to fall within the exception they must show: (1) that rights in property are at issue; (2) that property was taken; (3) that the taking was in violation of international law; and (4) that at least one of the two statutory nexus requirements are satisfied. *Id.* at 1319 (citations omitted). The nexus requirement is satisfied if the property in question or any property exchanged for such property is either (a) present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or (b) owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States. *Id.* (quotation marks and citations omitted).

[3] In Plaintiffs' Motions to Compel Pequiven and IPSL, Plaintiffs claim that those Defendants did not timely respond to the Requests for Admissions, and thus the Court should deem them admitted. (ECF Nos. 204 at 7-8; 205 at 7-8). At the hearing I found that Defendants had timely responded to the requests for admissions and therefore I denied Plaintiffs' Motions in that regard.

government.[4] All Defendants included in their objections a statement, in sum and substance, that any responsive documents, information and witnesses located in Venezuela are possessed and controlled by the Maduro regime, which will not allow Defendants and their counsel access to that information and that for this reason Defendants are unable to produce that information (herein, the "Objection").

Plaintiffs' central argument in their Motions to Compel is that this Objection is without merit and should be overruled. Before turning to that argument, I briefly address the ongoing crisis in Venezuela.

### c.   The Venezuelan presidential crisis

Venezuela has been in turmoil for years, causing its people great suffering. Of significance here, is the outcome of the May 2018, presidential election. Then-President Nicolas Maduro claimed victory in that election and thus a second term as President. Evidence of electoral fraud, however, led the democratically elected Venezuelan National Assembly to declare the election invalid and to appoint its Speaker, Juan Guaido, as Interim President of Venezuela, and Guaido was sworn-in as President on January 23, 2019. The same day, the United States recognized Guaido as the legitimate leader of Venezuela. Many other nations have done the same. While both Guaido and Maduro continue to claim the Presidency, Maduro has the support of the National Armed Forces, and control of

---

[4] In their response memoranda, Defendants summarize the documents they did produce. *See* (ECF Nos. 212 at 4-5; 213 at 7-8).

4

government ministries, their facilities, and State-owned enterprises, to include Pequiven and thus IPSL.[5]

Guaido has nonetheless established his own government. In 2019, the National Assembly authorized President Guaido to appoint a Special Attorney General, and he did so. The Special Attorney General is empowered to safeguard Venezuelan interests abroad, to include appointing counsel to represent the Republic and its entities in litigation in other countries. The National Assembly also appointed an Administrative Ad-Hoc Board of Directors of Pequiven, which is tasked with representing its interests and those of its associated companies, to include IPSL.

The law firm of Hogan Lovells has represented Pequiven and IPSL in this action since 2015. Both Defendants retained the firm during Maduro's first presidential term. In April 2019, the Guaido administrations' Special Attorney General decided that Hogan Lovells should continue to represent the companies. The Ad-Hoc Board of Pequiven confirmed this in January 2021. (ECF No. 213 at 5).

Earlier in this action, the law firm of GST, LLP represented the Republic. In 2019 the Special Attorney General selected the law firm of Arnold & Porter to assume that representation, on behalf of the Guaido administration. Consistent with this country's recognition of the Guaido government, the Republic thus moved to substitute Arnold & Porter as its counsel. (ECF No. 134). On behalf of its client, the Maduro regime, GST, LLP

---

[5] The Amended Complaint alleges that IPSL is the international commercial arm of Pequiven that is controlled by Pequiven and is its alter ego. (ECF No. 85 at 3 ¶ 5). Although a British Virgin Islands corporation, IPSL is headquartered at Pequiven's Venezuela headquarters. (*Id.*).

opposed the motion. (ECF No. 148). The Court allowed the substitution of counsel. (ECF No. 178).

Thus, before this Court, the Republic, and its associated agencies Pequiven and IPSL, are subject to the authority of the Guaido government, and answer only to it, while the Maduro regime controls their facilities, assets and information that are located in Venezuela. The difficulty this places on the discovery process is obvious.

## II.     The Motions to Compel

Plaintiffs urge this Court to: (1) overrule Defendants' objections and issue an order compelling Defendants to fully respond to its document requests and interrogatories; (2) find Defendants in contempt of this Court's Scheduling Order – which directed Defendants to respond to discovery no later than March 31, 2021 – and allow them to purge the contempt by producing the information Plaintiffs seek; (3) punish the contempt with entry of a default judgment; and (4) order Defendants to pay Plaintiffs for the attorneys' fees they incurred bringing their Motions and conferring with Defendants to try to resolve this dispute.

Underlying all of Plaintiffs' claims for relief is their argument that the Court should overrule Defendants' Objection, that they are unable to access information controlled by the Maduro regime. Plaintiffs argue broadly that "Venezuela is one country", (ECF No. 224 at 3), and that "[t]here is no Guaido's Venezuela and Maduro's Venezuela; there is just one republic with control over discovery materials and internal struggles should not prejudice Plaintiffs' right to justice." (*Id.* at 6). Plaintiffs are really making two arguments here. The first is that this Court should ignore the reality of the divided and competing

6

governments in Venezuela, which of course it cannot do. And second, Plaintiffs argue that the Court should penalize Defendants for their inability to access information controlled by the Maduro government by compelling them to produce what they cannot produce, then finding them in contempt of that order and ultimately entering a default judgment against Defendants for their noncompliance with their discovery obligations. The Court cannot do this either.

### a. Defendants are unable to access information Maduro controls

The Court rejects Plaintiffs' first argument. The records before this Court demonstrate that the Guaido administration, which this country and Court recognizes, and which represents Defendants in this case, cannot access information the Maduro regime controls – which includes information Plaintiffs seek in discovery.

Rule 34(a) of the Federal Rules of Civil Procedure, provides that a party responding to a request for production must produce documents and information in that party's "possession, custody or control." Fed. R. Civ. P. 34(a).[6] The Eleventh Circuit Court of Appeals addressed this standard in *Searock v. Stripling,* 736 F.2d 650 (11th Cir. 1984). There, the Court reversed a trial court's dismissal of a counterclaim as a sanction for the counterclaimant's (Stripling's) failure to produce discovery. In the discovery process, Stripling had offered to get documents from third parties with whom he had done business; those third parties, however, did not cooperate. The Court wrote that control, in Rule 34,

---

[6] Similarly, Defendants must also respond to interrogatories with information that is under its control. *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. 2011) (collecting authority for the principle that "Rules 33 and 34 are equally inclusive in their scope." (quotation marks and citation omitted).

"is defined not only as *possession*, but as the *legal right to obtain* the documents requested upon demand." *Id.* at 653 (emphasis added). The Court recognized that Stripling did not have control over the third parties' documents and then asked whether he nonetheless made a good faith effort to obtain those documents and found that he did. *Id.* at 654. The Court held that "[s]ince Stripling's noncompliance with the production order was due to his inability, after a good faith effort, to obtain these documents, the district court abused its discretion in dismissing his counterclaim." *Id.*

Here, there is no dispute that the Guaido administration does not have possession of documents and information, nor access to knowledgeable individuals, that Plaintiffs seek in discovery. The question then becomes whether it has the legal right to obtain this upon demand. Courts have recognized that a legal right to obtain information is meaningful in this context only if there is an ability to enforce compliance with that right. *See Siegmund v. Xuelian*, No. 12-26539-CIV, 2016 WL 1359595, at *3 (S.D. Fla. Apr. 6, 2016)[7] (quoting *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 520 (D. Colo. 2003)).[8] While the Guaido administration presumptively has the legal right to obtain information in Venezuela that Plaintiffs seek in discovery, the record here is clear that it does not have the ability to enforce that right.

---

[7] In *Siegmund*, the Court observed that "[a] former director's apparent ability to request documents from his former corporation … is not the same as the *right* to obtain those documents upon demand or the ability to enforce compliance with that demand. *Id.*

[8] *See also Mamani v. De Lozada Sanchez Bustamante*, Nos. 07-22459, 08-21063, 2017 WL 3456327, at *3 (S.D. Fla. Aug. 11, 2007) (former officer of corporation had neither the legal right to obtain documents from the corporation nor the ability to enforce compliance with his demand for those documents, and thus did not have control over those documents as recognized under Rule 34(a)(1)).

8

That record includes a declaration of Ramon Alfredo Aguilar, an attorney who serves as the Director of the Special Attorney General's Office, whose office has engaged in the discovery process on Defendants' behalf. (ECF No. 231-1 ¶¶ 7, 8). Aguilar notes that Plaintiffs' discovery requests include criminal files and internal federal and state government records and communications, which his office does not have the "practical ability" to obtain. (*Id.* ¶ 9).[9] His declaration includes this information:

> 3. … Nicolas Maduro, with the support and control of the National Armed Forces, continues to usurp authority and refuses to hand over control of government ministries and State-owned enterprises. Maduro's tactics have included violence against and imprisonment of those who challenge his control.
>
> * * *
>
> 5. The Office of the Special Attorney General is an organ of the Interim Government. However, it has no relation to the Maduro regime. To the contrary, the Office of the Special Attorney General disagrees with Maduro and the Office of the Attorney General about who has legal standing to serve as the legitimate representative of the Republic and its instrumentalities before U.S. courts and in international arbitration. *See Jimenez v. Palacios,* C.A. No. 2019-0490-KSJM, 2019 WL 3526479 (Del. Ch. Aug. 2, 2019).
>
> * * *
>
> 10. The Guaido Administration lacks physical access to documents and records. The Maduro regime has refused to surrender control of the organs of government. Government ministries and offices, including the offices that we believe have custody of the information requested by the plaintiffs, remain under the forcible control of the Maduro regime. This includes the archives of PDVSA, Pequiven, and judicial and police files.
>
> 11. It is also impossible for members of Guaido Administration to request documents from Maduro personnel at this time. The mere

---

[9] Plaintiffs ask Defendants to produce, among other things, internal government records and communications about Venezuela's allegedly unlawful search and confiscation of Plaintiffs' property, government records of its efforts to prosecute Plaintiffs, Venezuelan communications with INTERPOL about Plaintiffs, and licenses Venezuelan agencies issued for Plaintiffs' property. *See* (ECF No. 212 at 4) (providing summary of discovery Defendants cannot produce and citations to Plaintiffs' discovery requests).

identification of those who provide services to the Interim Government would expose those individuals, their families, and their property to reprisals from the Maduro regime. Indeed, many of the employees and officials of the Guaido Administration are currently based outside of Venezuela, due to fears for their safety, including the Special Attorney General and myself. Likewise, during 2020, the homes in Venezuela of personnel who worked for the Special Attorney General were the subject of illegal police raids, after those individuals had been identified as personally acting for the Republic in an international arbitration.

12. In any event, we have no reason to believe that Maduro or his officials would cooperate in any way with a request from the Office of the Special Attorney General or from anyone else in the Guaido Administration to provide access to documents or information, because they arbitrarily ignore the Guaido Administration's authority.

13. The Office of the Special Attorney General has taken all reasonable steps to comply with the plaintiffs' discovery requests in these very difficult circumstances.

(*Id.* ¶¶ 3, 5, 10-13).[10]

Aguilar's sworn statement specifically and concretely explains Defendants' inability to secure information located in Venezuela that is possessed and controlled by the Maduro government. Aguilar's statements are corroborated by publicly available and verified information about Maduro's control of the physical facilities and records of Venezuela's government and its agencies, and his refusal to share that information with the

---

[10] Defendants also attached to their responses to Plaintiffs' Requests for Production of Documents, correspondence they sent to request information responsive to Plaintiffs' discovery requests that, like Aguilar's sworn statement, further documents Defendants' inability to engage with the Maduro regime to access that information. *See* (ECF No. 206-7 at 4, 18) (the Republic's Response to Plaintiffs' first and second document requests); (ECF No. 204-7 at 4, 19-26) (IPSL's Response to Plaintiffs' first document requests); (ECF No. 204-8 at 4, 17-24) (IPSL's Response to Plaintiffs' second document request); (ECF No. 205-7 at 4, 18-25) (Pequiven's Response to Plaintiffs' first document request); (ECF No. 205-8 at 4, 15-22) (Pequiven's Response to Plaintiffs' second document request).

Guaido government.[11] Aguilar's assertion that Maduro uses violence and imprisonment against those who challenge his control, finds support in the recent 2020 Report of the United Nations Human Rights Council, which documented evidence of unlawful executions, enforced disappearances and arbitrary detentions and torture in Venezuela since 2014, linked to Maduro and his loyalists. UN News, *Venezuela abuses amounted to crimes against humanity: UN-appointed panel* (Sept. 16, 2020), https://news.un.org/en/story/2020/09/1072512.

Moreover, other courts have recognized that "Guaido's regime does not have meaningful control over Venezuela or its principal instrumentalities such as PDVSA."[12] *Crystallex Int'l. Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 135 n.2 (3d Cir. 2019); *see also Red Tree Investments, LLC v. Petroleos de Venezuela, S.A.*, No. 19-CV-2519, 2020 WL 209290, at *2-3 (S.D.N.Y. Jan. 14, 2020) (Maduro has control over operations of the Venezuelan government and government-owned entities, the Guaido

---

[11] In their Reply, Plaintiffs acknowledge as much when they write that "[m]any of Guaido's officials remain in exile; their power and supporters within Venezuela are weak", citing a March 10, 2021 report of the Congressional Research Service. (ECF No. 224 at 4). That report includes the following: "The Venezuelan opposition is weak and divided, with many of its leaders in exile. Although Guaido challenged Maduro's authority in 2019, his support has since faded. After Norway-led negotiations stalled in mid-2019, the Maduro government increased persecution of Guaido's supporters. Since March 2020, restrictions put in place to combat the spread of [COVID] have limited Guaido's ability to convene protests. Guaido also lost support after reports emerged that he condoned a plan that ended in a botched raid against Maduro in May 2020. Guaido and other opposition legislators now face prosecution by judicial authorities, who assert the legislators no longer have immunity since their legislative terms ended in January 2021." Clare Ribando Seelke, *Venezuela: Political Crisis and U.S. Policy*, (updated Mar. 10, 2021), https://fas.org/sgp/crs/row/IF10230.pdf.

[12] PDVSA – Petroleos de Venezuela, S.A. – is the state-owned Venezuelan oil and natural gas company.

11

government is unable to access that information, "and it is not clear that any amount of additional time will allow them access to the information they seek").

In the face of concrete evidence that Defendants are unable to access responsive discovery in the hands of the Maduro government, Plaintiffs have done nothing to show Aguilar's sworn declaration, and Defendants' Objection, are false.[13] When I asked Plaintiffs' counsel, at the hearing, what more Defendants should do, he replied that they could send a letter to Maduro's representatives and demand the documents. When pressed, however, Plaintiffs' counsel conceded that this would most likely be futile; something Plaintiffs acknowledged in their Motions when they wrote: "no matter how much time Venezuela and other defendants associated with the Republic are given, they will not be able to fulfill their pre-trial obligations including discovery." (ECF No. 206 at 10; 204 at 9; 205 at 9). This is the unfortunate truth: Defendants do not have possession or control over documents and information held by the Maduro government.

In sum, I find that Defendants do not have possession of, nor the ability to enforce their legal right to obtain, information controlled by the Maduro government. I further find that Defendants have satisfied the good faith requirement set out in *Searock*, 736 F.2d at 654. No court can compel someone to produce something it does not have and cannot get. The Court must deny Plaintiffs' Motions to Compel.

---

[13] As the party seeking discovery, Plaintiffs have the burden to establish that the opposing party has control over documents held by an affiliate. *Costa*, 277 F.R.D. at 473 n.2 (citing *United States v. Int'l Union of Petroleum and Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)).

### b. Sanctions are not warranted

As noted above, in their reply memorandum, Plaintiffs argue that Venezuela's "internal struggles should not prejudice Plaintiffs' right to justice." (ECF No. 224 at 6). From this premise, Plaintiffs urge the Court to find Defendants in contempt of the Court's Amended Scheduling Order on Jurisdictional Discovery, that ordered that Defendants serve their responses and objections to Plaintiffs' discovery requests no later than March 31, 2021. *See* (ECF No. 201). Defendants served their responses and objections on that date, and there is no basis to find Defendants in contempt of that Order.

Plaintiffs go further and ask this Court to enter a default judgment against Defendants if they do not produce the discovery possessed and controlled by the Maduro government. Plaintiffs have provided no justification for the Court to enter such an order.[14] Last, Plaintiffs ask the Court to order Defendants to pay Plaintiffs' attorneys' fees incurred bringing their Motions to Compel and conferring with Defendants in an effort to resolve this dispute. Given the Court's denial of Plaintiffs' Motions, there is no basis to provide Plaintiffs such an award. *See* Fed. R. Civ. P. 37(a)(5)(A).

## III. Conclusion

As noted at the outset, Plaintiffs have the burden to prove the applicability of the FSIA expropriation exception and thus subject matter jurisdiction. In resolving these

---

[14] Another Court faced a similar request and found that this would "risk[] the district court's assumption of jurisdiction where it may, in fact, have been lacking, something the court was not empowered to do, particularly where, as here, alternative sanctions are available." *Funk v. Belneftekhim*, 861 F.3d 354, 358 (2d Cir. 2017) (reversing trial court's decision to strike defendant's FSIA defense as a sanction for their failure to provide discovery).

13

Motions, the Court is fully aware that the parties' inability to access information located in Venezuela may leave Plaintiffs unable to prove that this Court has jurisdiction (if, in fact, it does).[15] I thus acknowledge that Plaintiffs, as they fear, may be prejudiced by Defendants' inability to produce the desired discovery. This remains to be seen. The point here is that the possibility of such an unfortunate outcome does not empower the Court to issue the orders Plaintiffs request. To state the obvious: there are many unfair and unfortunate circumstances for which the law does not have a remedy. This may be one of them.

**DONE and ORDERED** in Miami, Florida, this 10th day of August 2021.

                                                                                _____
                                                                                CHRIS MCALILEY
                                                                                UNITED STATES MAGISTRATE JUDGE

cc:    The Honorable Kathleen M. Williams
        Counsel of record

---

[15] It may also compromise Defendants' ability to defend against Plaintiffs' assertion of the FSIA exception.